[No. F032060. Fifth Dist. Mar. 22, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
VAN HUGH NEEDHAM, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and II.

## COUNSEL

John Hardesty, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Stephen G. Herndon and Rachelle A. Newcomb, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**VARTABEDIAN, Acting P. J.**—Defendant Van Hugh Needham pled guilty to possessing methamphetamine and an opium pipe after the court denied his motion to suppress evidence. On appeal, he claims (1) the police lacked reasonable suspicion to detain him, (2) he was detained for an

unreasonable period of time, and (3) the inventory search was unreasonable in scope. In the published portion of this opinion we discuss matters concerning inventory searches of motorcycles. We affirm.

### FACTS AND PROCEEDINGS

In the afternoon of July 24, 1998, a Hispanic male ran from the backyard of Luz Villegas's home to the front yard and asked Villegas if he could hide in her house. Villegas also saw a White male (defendant) drive a motorcycle around Ledbetter Park three times. The Hispanic male stopped defendant, gave him some white bags, and got on the motorcycle as a passenger. A woman driving a white van then stopped to tell Villegas she had just been robbed by a man on a motorcycle.

Villegas then telephoned 911 to report that the Hispanic male had stolen something and had left with defendant on a motorcycle. Villegas described defendant as a White male with tattoos on his arm who had left through Eddy Road, had dropped off the Hispanic male, and had returned to Ledbetter Park. She called a second time to tell the sheriff's department that defendant was parked in Ledbetter Park.

The 911 dispatcher, Denise Rutledge, did not recall Ms. Villegas providing any description of the man on the motorcycle other than that he was in Ledbetter Park and being followed by a white van. The dispatcher knew Ms. Villegas's address because it automatically appears when calling 911.

Tulare County Sheriff's Lieutenant Jay Salazar, who responded to the dispatcher's call, recalled the dispatcher told him that a White male on a motorcycle with a Hispanic male passenger had been involved in a theft. The information Salazar received included the location of the suspected thieves: the Cutler area near Ledbetter Park.

Lieutenant Salazar found defendant sitting on a motorcycle (without a passenger) and detained him. Salazar handcuffed defendant because he was the only person fitting the description of a White male on a motorcycle in the park. Two other officers, Deputy Timothy Brian Fosnaugh and Sergeant Verissimo, arrived. Villegas also arrived and identified defendant, but the police removed the handcuffs after determining he was not involved in the robbery.

Deputy Fosnaugh then noticed the expired registration tags on defendant's motorcycle. Fosnaugh confirmed his observation through dispatch, additionally learning that defendant was not the registered owner of the motorcycle.

Fosnaugh told defendant the motorcycle would be towed because of the expired registration. In preparation for impoundment, Fosnaugh completed a towing form and inventoried the property on the motorcycle. In a duffel bag attached with bungee cords to the rear seat of the motorcycle, Fosnaugh found some glass pipes that appeared to be drug-related paraphernalia. In a blue pouch attached to the front handlebars, Fosnaugh found additional glass opium pipes; he also found a colored container holding a small plastic baggie of a powder Fosnaugh believed to be a controlled substance. Defendant was arrested.

The Tulare County Sheriff's Department has an oral policy concerning inventory searches based on the Vehicle Code that is taught to deputies through field training courses. According to this policy, officers conducting an inventory search must check all valuables and property in the vehicle and record them on the towing form in as much detail as possible. The purpose of this policy is to prevent unverifiable theft from the vehicle because the department is responsible for the property from an impounded vehicle. The policy also protects officer safety because weapons may be concealed in the vehicle or in bags within the vehicle. The officer has discretion whether all property from the vehicle is seized or released to an individual. For example, if an individual needs a particular item in the vehicle, such as a purse, wallet, or briefcase for work, the officer generally releases the item to the individual after it has been checked. The sheriff's department has not established any criteria to guide the officer in exercising this discretion whether to release or seize property during an inventory search.

On September 2, 1998, the District Attorney of Tulare County charged defendant in count I with possessing methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and in count II with possessing an opium pipe (Health & Saf. Code, § 11364). In connection with count I, the information further alleged that defendant had been previously convicted of first degree burglary in 1992, which qualified as a serious felony conviction within the meaning of Penal Code section 1170.12, subdivision (c)(1),[1] and that he had served a prior prison term within the meaning of section 667.5, subdivision (b). Defendant pled not guilty and denied the allegations.

On October 13, 1998, the court denied defendant's section 1538.5 motion to suppress evidence. The next day, defendant changed his plea to guilty of the charges and admitted the special allegations. Pursuant to the plea agreement, the court struck the prior prison term allegation, and sentenced defendant to the lower term of 16 months, doubled to 32 months in light of the second strike finding under the three strikes law. Defendant timely appeals.

---

[1]All statutory references are to the Penal Code unless otherwise noted.

## Discussion

Defendant argues the contraband and related paraphernalia should have been suppressed because he was detained without reasonable suspicion, the scope of his detention was unreasonable, and the inventory search was overbroad.

 "[I]t is settled that in ruling on a motion [to suppress] under section 1538.5 the superior court sits as a finder of fact with the power to judge credibility, resolve conflicts, weigh evidence, and draw inferences, and hence that on review of its ruling by appeal or writ all presumptions are drawn in favor of the factual determinations of the superior court and the appellate court must uphold the superior court's express or implied findings if they are supported by substantial evidence." (*People v. Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].) The reviewing court then independently reviews the superior court's determination that no Fourth Amendment violation occurred in conducting the search. (*People v. Memro* (1995) 11 Cal.4th 786, 846 [47 Cal.Rptr.2d 219, 905 P.2d 1305]; *People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729].) If the search or seizure violated the Fourth Amendment, then the evidence seized as a result of that search must be excluded. (*Mapp v. Ohio* (1961) 367 U.S. 643, 655 [81 S.Ct. 1684, 1691-1692, 6 L.Ed.2d 1081].)

Here, the trial court found that defendant's detention was supported by reasonable suspicion. Relying on *People v. Salcero* (1992) 6 Cal.App.4th 720 [8 Cal.Rptr.2d 578], the trial court also found proper the inventory search of the bags attached to the motorcycle, even though the bags belonged to defendant and not the owner of the motorcycle. The trial court further found the sheriff's inventory search policy appropriate to protect against loss of property and for the safety of officers. In addition, the court found the search conducted by the officer was consistent with the stated policy.

I., II.*

· · · · · · · · · · · · · · · · · · · · · · · · ·

## III.

### *The Inventory Search*

 Defendant argues the search of his property exceeded the scope of a lawful inventory search.

---

*See footnote, *ante*, page 260.

■ Inventory searches must be reasonable under the Fourth Amendment. (*Colorado v. Bertine* (1987) 479 U.S. 367, 371, 375-376 [107 S.Ct. 738, 742-743, 93 L.Ed.2d 739].) The police may exercise discretion in opening containers during inventory searches provided that discretion is exercised according to "standardized criteria" (*id.* at p. 376 [107 S.Ct. at p. 743]) or "established routine" (*Illinois v. Lafayette* (1983) 462 U.S. 640, 648 [103 S.Ct. 2605, 2610-2611, 77 L.Ed.2d 65]) based on some standard other than suspected criminal activity. (*Florida v. Wells* (1990) 495 U.S. 1, 4 [110 S.Ct. 1632, 1635, 109 L.Ed.2d 1], citing *Bertine, supra,* 479 U.S. at p. 375 [107 S.Ct. at pp. 742-743].) "A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself." (*Florida v. Wells, supra,* 495 U.S. at p. 4. [110 S.Ct. at p. 1635].) For instance, an inventory policy permitting police officers to open closed containers when unable to ascertain the contents from examining the container's exterior would not violate the Fourth Amendment. (*Ibid.*)

The standardized procedure or established routine authorizing the inventory search need not be written. (*People v. Steeley* (1989) 210 Cal.App.3d 887, 889 [258 Cal.Rptr. 699].) However, "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." (*Florida v. Wells, supra,* 495 U.S. at p. 4 [110 S.Ct. at p. 1635].)

■ Here, the Tulare County Sheriff's Department has an oral policy concerning inventory searches based on the Vehicle Code that is taught to deputies through field training courses. Consistent with this policy, Deputy Fosnaugh searched inside containers that may have contained valuables or dangerous items. The police officer performed the inventory search pursuant to established policies and there is no evidence that the police used the inventory as a ruse to search for incriminating evidence.

■ Inventory searches are supported by a threefold rationale: "[1] to protect an owner's property while it is in the custody of the police, [2] to insure against claims of lost, stolen, or vandalized property, and [3] to guard the police from danger." (*Colorado v. Bertine, supra,* 479 U.S. at p. 372 [107 S.Ct. at p. 741]; *South Dakota v. Opperman* (1976) 428 U.S. 364, 369 [96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000]; *Whren v. United States* (1996) 517 U.S. 806, 811, fn. 1 [116 S.Ct. 1769, 1773, 135 L.Ed.2d 89].)

■ Consistent with this rationale, the purpose of the Tulare County Sheriff's inventory policy is to catalog the contents of the vehicle in order to prevent unverifiable theft because the department is responsible for the property from an impounded vehicle. A further purpose of the sheriff's

policy concerns protecting officers from weapons concealed in the vehicle or in the vehicle's containers.

Deputy Fosnaugh testified that, because the policy is to check all valuables when conducting an inventory search, he looks for items of great value and then lists them on the towing form. Fosnaugh also explained that he searches bags and other containers before turning them over to the person claiming them because of the possibility that the property may contain a concealed weapon.

Thus, we conclude that the unwritten policy of the Tulare County Sheriff's Department concerning inventory searches is sufficiently standardized to satisfy the Fourth Amendment and that in conducting the inventory search in this case, Deputy Fosnaugh exercised his discretion within that standard procedure.

In trying to convince us that the inventory search was unlawful, defendant asserts four arguments, none of which has merit.

First, defendant argues that bags temporarily attached to the exterior of a motorcycle are not the proper subject of an inventory search because they cannot be locked or securely stored inside the vehicle like bags in an automobile. According to defendant, such bags should be immediately returned to the person in possession. We disagree.

For purposes of the Fourth Amendment, "containers attached to the car . . . are 'in' the car." (*Wyoming v. Houghton* (1999) 526 U.S. 295 [119 S.Ct. 1297, 1301, 143 L.Ed.2d 408] [addressing the need for probable cause to search for incriminating evidence in a car].) We see no reason to treat motorcycles differently from cars in this respect. A motorcycle, like a car, is a vehicle. Thus, containers attached to a vehicle, whether a motorcycle or a car, are considered "in" the vehicle for purposes of the Fourth Amendment.

Nor is there any significant difference between bags and pouches temporarily attached to a vehicle and a more permanent receptacle, such as a glove compartment or trunk. Whether the receptacle was created by the defendant or a manufacturer, the space is used to hold items. Thus, bags attached to a motorcycle should be treated like any other closed receptacle for purposes of the Fourth Amendment because the bag is a part of the vehicle just like any other compartment or receptacle.

Second, defendant argues that the police officer had unfettered discretion in determining whether to search inside the containers. To the contrary, the

discretion granted the officers concerned whether to release property to an individual, not whether to look inside the container. And as far as the exercise of this discretion is concerned, "if there's something in the vehicle that the person needs, part of their work, . . .—their purse or wallet or whatever, once it's been checked it's released to [that person]." Thus, not even this discretion is unlimited, as defendant claims. Consequently, we believe that the Tulare County Sheriff's policy is sufficiently specific to prevent officers from exercising their discretion to rummage indiscriminately through a person's belongings.

Third, defendant argues that the container search cannot be justified on the ground that the officers did not know whether the items belonged to defendant or the owner of the motorcycle. This argument ignores the justification for inventory searches. If the bags contained valuables that belonged to the owner of the motorcycle, the sheriff's office would be responsible for their safekeeping. And if the bags contained a weapon that defendant could have used on the officers, checking the bag before returning it to defendant would have reduced the risk of that danger.

Fourth, defendant claims that officer safety does not justify the inventory search of a motorcycle because containers inside a closed vehicle being impounded present a different danger than that of a bag affixed to the outside of a motorcycle. We disagree. A gun, knife or small quantity of explosives carried in a pouch attached to a motorcycle is no less concealable and available than like items in a handbag inside a car.

We conclude that the inventory search of the motorcycle was reasonable in scope.

### DISPOSITION

The judgment is affirmed.

Wiseman, J., and Levy, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 12, 2000.