Filed 4/12/13  P. v. DelReal CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>NICHOLAS DELREAL III,<br><br>        Defendant and Appellant. | D061457<br><br><br>(Super. Ct. Nos. SCD224038,<br> SCD235801) |

APPEAL from a judgment of the Superior Court of San Diego County, William H. Kronberger, Jr., Howard H. Shore, and Esteban Hernandez, Judges.  Affirmed.

INTRODUCTION

A jury convicted Nicholas DelReal III of transportation of a controlled substance (Health & Saf. Code, § 11379, subd. (a)), possession of a controlled substance for sale (Health & Saf. Code, § 11378), possession of 28.5 grams or more of methamphetamine for sale (Health & Saf. Code, § 11378; Pen. Code, § 1203.073, subd. (b)(2)),[1] possession

_____

1       Further statutory references are also to the Penal Code unless otherwise stated.

of a short-barreled shotgun (former § 12020, subd. (a)(1)),[2] possession of a firearm by a felon (former § 12021, subd. (a)(1)),[3] and possession of Oxycodone (Health & Saf. Code, § 11350, subd. (a)).  As to the possession of methamphetamine for sale conviction, the jury also found true an allegation DelReal was personally armed with a handgun (§ 12022, subd. (c)).  DelReal subsequently admitted having a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12).  The trial court sentenced him to 11 years in prison.

DelReal appeals, contending we must reverse his conviction because the trial court erroneously denied his pretrial motion to suppress the evidence against him.  He further requests we independently review the search warrant to determine whether the affidavit supporting it was properly sealed and whether the affidavit contained information that should have been disclosed to DelReal to ensure he had a fair trial.

We conclude the trial court properly denied DelReal's suppression motion.  We further conclude the affidavit supporting the search warrant was properly sealed and nothing in it required disclosure for DelReal to have a fair trial.  We, therefore, affirm the judgment.

---

[2]     Effective January 1, 2012, former section 12020, subdivision (a)(1), was repealed and reenacted without substantive change as section 33215.  (Stats. 2010, ch. 711, § 4 [repealed]; Stats. 2010, ch. 711, § 6 [reenacted].)

[3]     Effective January 1, 2012, former section 12021, subdivision (a)(1), was repealed and reenacted without substantive change as section 29800, subdivision (a)(1).  (Stats. 2010, ch. 711, § 4 [repealed]; Stats. 2010, ch. 711, § 6 [reenacted].)

BACKGROUND

According to the evidence presented at the preliminary hearing, upon which the trial court decided the suppression motions, San Diego Police Detective Michael Rubio received information from a citizen informant indicating DelReal was involved in selling narcotics. The informant stated DelReal resided in unit 104 at 9384 Twin Trails Drive. He had two vehicles, including a silver BMW with California license plate number 5RQS142, and he used a pouch or magnetic device to place narcotics under the wheel well.

On November 23, 2009, Rubio surveilled the Twin Trails Drive property and saw the BMW parked in front of unit 104. Rubio saw DelReal leave the complex on a bicycle, return a short time later, and go inside unit 104. About an hour later, DelReal and another person left unit 104 and went to the BMW. DelReal placed a pouch underneath the BMW's right rear tire wheel well. Then, DelReal and the other person got into the BMW and DelReal drove it away.

Officer Michael Power stopped the BMW at 9500 Twin Trails Drive because there were no registration tags on the BMW's rear license plate and a computer check indicated the vehicle was not registered. Before Power stopped the BMW, detectives told him DelReal was a suspected drug dealer and there may be illegal substances stashed underneath the right wheel well.

After the stop, DelReal was unable to produce a driver's license. A computer check using DelReal's name and birth date indicated DelReal's license had expired. Power had DelReal step out of the BMW to further investigate the status of DelReal's

3

license.  Power patted DelReal down for safety reasons, discovered a switchblade in his right front pocket and arrested him.

Because a computer check showed DelReal did not have a current driver's license, Power decided to impound the BMW and ordered a tow truck.  The police department's standard policies and procedures for impounding vehicles included conducting an inventory search of any part of a vehicle that could contain anything dangerous or illegal prior to impound.  Rubio arrived at the traffic stop location about 15 to 20 minutes after the residence surveillance.  Power informed Rubio of his decision to impound the vehicle.  The tow truck pulled up as Power and narcotics detectives started inventorying the BMW.

Rubio told Detective Javie Nunez where he had seen DelReal place the pouch.  Nunez reached underneath the wheel well and removed the pouch.  At the time of the preliminary hearing, Rubio had participated in several hundred car inventory searches.  Eighty to 90 percent of those searches included checking the wheel wells.  Rubio did not know whether the police department's standard policy and procedures for vehicle impounds specifically discussed searching wheel wells.  However, they did not prevent an officer from searching a wheel well.

Rubio searched the pouch.  It contained several large and small bags of a crystalline substance, multiple empty bags, a small digital scale, a baggie with several pills, a memory card, and a business card.  Based on his training and experience, Rubio opined the crystalline substance was a usable amount of methamphetamine.  The parties stipulated for purposes of the motion to suppress that there were 75.96 grams of

4

methamphetamine in the pouch. Narcotics detective Jovanna Derrough opined based on her training and experience that DelReal possessed the methamphetamine for sale purposes.

After Rubio and Nunez discovered the narcotics, Power searched the BMW's interior to find any driver's license documentation. He found a DMV-issued paper license with DelReal's name on it. At that point, Powers decided not to impound the BMW and instead parked it.

Derrough and a team of others executed a search warrant at DelReal's home the same day. In the master bedroom, the team found men's clothing, DelReal's identification, dominion and control documents in DelReal's name, and pay and owe sheets with one entry about "Nick's info." They also found a short-barreled shotgun and a loaded handgun in a green, nylon bag. In addition, they found 430 grams of methamphetamine and pills, including two Oxycodone pills, in a black pouch in a wall safe. Derrough opined the 430 grams of methamphetamine was possessed for sale purposes.

DISCUSSION

I

*Motions to Suppress*

Before trial, DelReal brought two motions to suppress the evidence against him: an initial motion under section 1538.5, subdivision (a), and a renewed motion under

section 1538.5 subdivision (i).[4]  In the motions, he argued the warrantless search of his vehicle was unlawful and tainted the subsequent search of his home.  The trial court denied both motions.  He contends we must reverse his convictions because the denial of his motions was erroneous.

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated.  [Citation.]  We review the court's resolution of the factual inquiry under the deferential substantial-evidence standard.  [Citation.]  The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review."  (*People v. Hoyos* (2007) 41 Cal.4th 872, 891, overruled on another ground by *People v. McKinnon* (2011) 52 Cal.4th 610, 637-643.)

A

*Automobile Exception*

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."  (*Katz v. United States* (1967) 389 U.S. 347, 357; see also *People v. Schmitz* (2012) 55 Cal.4th 909, 916 [warrantless search is constitutionally unreasonable unless conducted pursuant to an

---

[4]     "At the preliminary hearing, a defendant may move to suppress evidence obtained from an illegal search or seizure.  [Citation.]  But doing so will not preserve the issue for appeal.  [Citation.]  To do that, the defendant may renew the motion to suppress in the trial court, where he is entitled to a hearing de novo."  (*People v. Torres* (2010) 188 Cal.App.4th 775, 783 (*Torres*).)

6

exception to the warrant requirement].)  One such exception is the automobile exception.  (*Carroll v. United States* (1925) 267 U.S. 132, 149; *United States v. Ross* (1982) 456 U.S. 798, 809.)  Under this exception, a police officer who has probable cause to believe a lawfully stopped vehicle contains evidence of criminal activity may search any area of the vehicle, or any container in the vehicle, where the evidence may be located.  (*Arizona v. Gant* (2009) 556 U.S. 332, 347; *California v. Acevedo* (1991) 500 U.S. 565, 570, 579-580; *United States v. Ross*, *supra*, at p. 825; *People v. Chavers* (1983) 33 Cal.3d 462, 466.)  "[C]ontainers attached to a vehicle, whether a motorcycle or a car, are considered 'in' the vehicle for purposes of the Fourth Amendment."  (*People v. Needham* (2000) 79 Cal.App.4th 260, 267.)

Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  (*Illinois v. Gates* (1983) 462 U.S. 213, 238.)  Determining the existence of probable cause requires a practical, commonsense judgment based on the totality of the circumstances, including the veracity, reliability and basis of knowledge of an informant.  (*Id*. at pp. 238-239.)  Assessing an informant's veracity, reliability, and basis of knowledge does not involve the application of a rigid formula.  A strong showing in one area may compensate for a deficiency in another.  (*Id*. at p. 233.)

According to Rubio, the informant in this case was a citizen informant.  Absent some information casting doubt on their information, citizen informants are considered reliable.  (*People v. Ramey* (1976) 16 Cal.3d 263, 268-269.)  Rubio did not rely on this presumption, however, for probable cause to search DelReal's vehicle.  Instead, Rubio

independently verified the informant's information, including DelReal's name, address, vehicle, and use of a magnetic pouch placed in his vehicle's wheel well. The only information from the informant Rubio did not and could not verify in advance was the contents of the magnetic pouch. Verification of these details indicated the informant's other information about DelReal's narcotics involvement was also true. (*Illinois v. Gates*, *supra*, 462 U.S. at p. 244.)

As DelReal points out, much of the information Rubio verified consisted of "pedestrian facts." "For corroboration to be adequate, it must pertain to the alleged criminal activity; accuracy of information regarding the suspect generally is insufficient. [Citation.] Courts take a dim view of the significance of 'pedestrian facts' such as a suspect's physical description, his residence and his vehicles. [Citation.] *However, the corroboration is sufficient if police investigation has uncovered probative indications of criminal activity along the lines suggested by the informant.* [Citation.] *Even observations of seemingly innocent activity provide sufficient corroboration if the anonymous tip casts the activity in a suspicious light.* [Citations.]" [Citation.]' " (*People v. French* (2011) 201 Cal.App.4th 1307, 1319-1320, italics added.) Rubio's verification of DelReal's use of a magnetic pouch in his vehicle's wheel well was a probative indication DelReal was, in fact, involved in narcotics trafficking. Accordingly, we conclude the informant's information coupled with Rubio's firsthand observations provided probable cause for Rubio to search the vehicle's wheel well and the magnetic pouch.

B

*Inventory Search Exception*

Another well-defined exception to the warrant requirement is an inventory search. (*Colorado v. Bertine* (1987) 479 U.S. 367, 371; *Torres*, *supra*, 188 Cal.App.4th at p. 787.)  Under this exception, an inventory search of a lawfully impounded vehicle and of containers found in the vehicle is constitutionally reasonable as long as the search is conducted according to standard criteria or established routine and is based on something other than suspicion of evidence of criminal activity.  (*South Dakota v. Opperman* (1976) 428 U.S. 364, 375-376; *Colorado*, *supra*, at pp. 372, 375; *Florida v. Wells* (1990) 495 U.S. 1, 3-5.)  The search "must not be a ruse for a general rummaging in order to discover incriminating evidence."  (*Florida*, *supra*, at p. 4.)

In determining whether an inventory search was constitutionally valid, California courts " 'focus on the purpose of the impound rather than the purpose of the inventory.' [Citation.]  '[A]n inventory search conducted pursuant to an unreasonable impound is itself unreasonable.' "  (*Torres*, *supra*, 188 Cal.App.4th at p. 786.)  Thus, an inventory search is invalid if the impounding of the vehicle searched did not serve a community caretaking function and instead was a pretext for conducting an investigatory search without probable cause.  (*Id.* at p. 788.)

Giving deference to the trial court's factual findings as we must, we conclude there is substantial evidence in the record to support a finding Power's decision to impound DelReal's vehicle was not merely a ruse for conducting an improper investigatory search. Although Power knew detectives suspected DelReal was transporting narcotics before he

9

stopped DelReal's car, the record shows Power decided to impound DelReal's vehicle before detectives reached the scene. The record also shows Power made the decision only after DelReal was unable to produce a valid driver's license and a computer check indicated his license had expired.

In addition, the impound was authorized under Vehicle Code section 14602.6, subdivision (a)(1). (*Torres*, *supra*, 188 Cal.App.4th at p. 781.) Such impounds serve a community caretaking function as their primary purpose is to protect the lives and property of other people from the harm caused by unlicensed drivers. (*Alviso v. Sonoma County Sheriff's Dept.* (2010) 186 Cal.App.4th 198, 206.)

The record further shows the San Diego Police Department has standardized procedures requiring inventory searches of any part of a vehicle that could contain anything dangerous or illegal prior to the vehicle's impound. Moreover, based on his training and experience, Rubio had an established, general practice of searching wheel wells as part of the inventory searches he conducts. Searches of wheel wells are not expressly prohibited by the department's standardized procedures and fall within their broad scope. Accordingly, we conclude DelReal has not established the inventory search of his vehicle was constitutionally invalid.

*Torres*, *supra*, 188 Cal.App.4th 775, upon which DelReal principally relies, is distinguishable. Unlike here, the officer in that case admitted he decided to impound the vehicle to facilitate an inventory search to look for whatever narcotics-related evidence might be in the vehicle. (*Id.* at p. 781.)

10

## C

### *Search Incident to Arrest Exception*

Given our conclusion officers had probable cause to search DelReal's vehicle and the magnetic pouch, and our alternative conclusion that officers conducted a lawful inventory search of the vehicle and pouch, we need not address DelReal's contention that the officers did not lawfully search the vehicle and pouch incident to his arrest. We also need not address his contention his trial defense counsel provided ineffective assistance by failing to cite recent United States Supreme Court authority in support of his position on this issue.

## II

### *Review of Search Warrant Affidavit*

Before trial, at DelReal's request and with the People's agreement, the trial court inspected the warrant for the search of DelReal's home to determine whether the affidavit supporting it was properly sealed and whether the affidavit contained information indicating the confidential informant was a material witness whose nondisclosure would deprive DelReal of a fair trial. After conducting an in camera review of the warrant, the trial court found the search warrant was properly sealed and it contained no information that had to be disclosed for DelReal to obtain a fair trial.

DelReal's request for the trial court's review was prompted in part by his suspicion the informant was not an anonymous citizen, but a known person with a then pending criminal case whose name appeared on a credit card found in a safe in DelReal's home along with drugs. The trial court's review did not assuage his suspicions and he requests

11

we independently review the sealed materials "to determine whether there was in fact any information that should have been disclosed to [DelReal] or his counsel that would establish the informant's personal knowledge of [DelReal's] activities or whether law enforcement officers may have mislead [*sic*] the court as to their claim that the informant was a 'citizen informant.' "

The People concede DelReal is entitled to have us independently review the sealed materials under *People v. Hobbs* (1994) 7 Cal.4th 948. However, the People argue we must limit our review to the "issue of whether the informant is a material witness as to guilt or innocence such that nondisclosure of the informant's identity would deprive [DelReal] of a fair trial." We agree with DelReal that the People's argument is largely semantic and, in any event, the scope of our review on appeal is necessarily framed by the scope of review below.

Therefore, like the trial court, we reviewed the search warrant to determine whether the affidavit supporting it was properly sealed and whether the affidavit contained information that should have been disclosed to DelReal. Also like the trial court, we conclude the affidavit was properly sealed and contained no information that had to be disclosed for DelReal to obtain a fair trial.

DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

HALLER, J.

IRION, J.