Filed 12/28/17; Certified for Publication 1/24/18 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JEROME CLIFFORD GOLDEN,<br><br>    Defendant and Appellant. | F072710<br><br>(Super. Ct. No. F12909338)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Jane Cardoza, Judge.

Michael B. McPartland, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P.J., Gomes, J. and Franson, J.

Defendant Jerome Clifford Golden, a sexually violent predator (SVP) committed to Coalinga State Hospital (CSH),[1] was charged with possession of child pornography by a registered sex offender (Pen. Code,[2] § 311.11, subd. (b)).  The information further alleged he had been convicted of committing a lewd or lascivious act upon a child under 14 years of age, a qualifying "strike" offense (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), in 1992 and 1995.  The jury found defendant guilty as charged.  In a bifurcated proceeding, the trial court found true the prior convictions.[3]  Thereafter, defendant was sentenced to 25 years to life in prison.

On appeal, defendant contends a suppression motion and a *Romero*[4] motion should have been granted.  For the reasons set forth below, we affirm the judgment.

## DISCUSSION

### I.    Defendant's suppression motion was correctly denied.

a.  *Background.*

On March 21, 2012, at approximately 7:00 p.m., Denise Martin, a CSH psychiatric technician, entered the dormitory inhabited by, inter alios, Ronald Rudd, an SVP. [5]  On Rudd's television, Martin saw footage of "an adult male with an erect penis" and a boy "maybe 10 or 11" years of age "giving oral copulation."  She and a coworker confiscated Rudd's external hard drive, which "was connected to the TV" and "was playing the video."  Martin reported the incident to CSH police.  Officer Phillip Wikler conducted a

---

[1]    Defendant was determined to be an SVP in 1997.  Before he was transferred to CSH in 2007, he had been committed to Atascadero State Hospital.

[2]    Subsequent statutory citations refer to the Penal Code unless otherwise indicated.

[3]    The record indicates defendant also admitted the 1995 conviction.

[4]    *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

[5]    The CSH dormitories accommodate four patients.  Each patient's corner has a bed and a privacy curtain that "can enclose . . . the majority of the[] area."  A metal partition also separates the two "front" beds from the two "back" beds.

"search for cause"[6] of Rudd's dormitory, during which Rudd conceded "the child pornography was his" and "wanted to tell [CSH police] everything." In an interview with Wikler and Sergeant Kristopher Peugh, Rudd stated he had purchased the pornography from defendant for $10. At approximately 8:50 p.m., Officer Daniel Garza and others conducted a search for cause of defendant's dormitory section. They seized a memory card from the pocket of defendant's state-issued T-shirt, a four-gigabyte USB flash drive, and around 200 compact discs. Garza patted down defendant and found another memory card in a pants pocket.

In a March 22, 2012, interview with Garza and Sergeant Jerry Duvall, defendant stated he woke up on March 21, 2012, at approximately 8:30 p.m. and saw "a small clear case containing two . . . memory cards [i]n it." He "took them out of the case to see what was on them," "put them in his DVD player," and observed child pornography. At the same time, CSH police entered the dormitory. Defendant "put [the memory cards] in a pocket because he didn't know what to do when the officers entered the room." On June 6, 2012, Duvall executed a search warrant, examined the memory cards, and found child pornography.

On February 1, 2013, defendant filed a suppression motion pursuant to section 1538.5, alleging the warrantless search on March 21, 2012, violated the Fourth Amendment. On March 12 and 13, 2013, the superior court heard the motion in conjunction with the preliminary hearing. At the hearing, CSH police testified CSH is a maximum-security psychiatric hospital with a patient population of 1,100, between 80 to 85 percent of whom are sexually violent predators. Because CSH is located on the grounds of Pleasant Valley State Prison, a visitor cannot access the hospital unless he or

---

**6**     At the preliminary hearing, Wikler described a "search for cause" as "[w]hen a reasonable person with similar experience or training in possession of facts that they believe to be true that a crime has been committed can conduct a search for evidence of this crime."

she first passes an inspection by the Department of Corrections and Rehabilitation. Various signs throughout CSH advise that all persons, vehicles, and items are subject to search and/or list prohibited items. Officers conduct random searches of patients and their dormitories for contraband daily to maintain institutional security. However, patients often dispose of items in the trash or in the toilet once they realize officers are conducting a search. A major problem is the sale of child pornography. According to Sergeant Duvall, CSH is "possibly becoming a distribution hub." In addition, there have been assaults on (1) those "coming forward" to report child pornography; and (2) those who possess the child pornography by fellow patients who "don't like the persons having materials like that."

Following the hearing, the superior court ruled:

"[I]n regards to the motion to suppress pursuant to . . . [s]ection 1538.5, . . . it's clear that the Fourth Amendment at least does apply. However, . . . because there is a civil commitment of [defendant] – and it's my understanding that was pursuant to Welfare and Institutions Code [s]ection 6604 – the Court finds that [defendant], because he was committed under that code section, it's a civil commitment and there is a significant reduction in any expectation of privacy. In regards to what that expectation of privacy would entail, it seems to me that there is [an] expectation of privacy regarding . . . some aspects of his treatment. However, in regards to his living area, . . . the Court has to take into consideration the type of facility. . . . [T]his is a maximum security state hospital. It's located within a state prison. A witness testified as to what is involved in gaining access to the facility, specifically the state hospital. The Court is taking that into consideration. The Court is also taking into consideration the notice or signs that have been posted or are posted . . . within the facility and outside the facility.

"In regards to the search for cause, . . . it doesn't appear that there are any cases that define what search for cause means, whether that's reasonable suspicion or probable cause. Even if the Court were to use the probable cause standard which is higher than reasonable suspicion, in this case, given the strong security interest of the institution in regards to contraband, . . . in this case the child pornography and attempts to keep that outside of the facility, those outweigh any issues regarding the officer's ability then to search for those items. And in this case, they had that

4.

probable cause based on the statements of Mr. Rudd, the evidence that was observed by staff, and the prompt action by the state police to then go and obtain whatever evidence they were able to locate based on that information, and that information pointed to [defendant].  And so the officers did have probable cause to then seize those items.  And then subsequently, . . . the officers did obtain a search warrant to actually view the items that were found in [defendant]'s possession.

"So in light of the significant reduced expectation of privacy that [defendant] would have, the Court at this time finds no violation of the Fourth Amendment.  Therefore, the Court will deny the defense motion to suppress the evidence that was initially seized and then the evidence that was obtained as a result of any subsequent search warrant as to the actual items and images that were depicted on any media device."

b.  *Standard of review.*

" '[I]t is settled that in ruling on a motion [to suppress] under section 1538.5 the superior court sits as a finder of fact with the power to judge credibility, resolve conflicts, weigh evidence, and draw inferences, and hence that on review of its ruling by appeal or writ all presumptions are drawn in favor of the factual determinations of the superior court and the appellate court must uphold the superior court's express or implied findings if they are supported by substantial evidence.' [Citation.]" (*People v. Needham* (2000) 79 Cal.App.4th 260, 265.)  "Substantial evidence is ' "evidence which is reasonable, credible, and of solid value." ' [Citation.]" (*People v. Bohana* (2000) 84 Cal.App.4th 360, 368.)  "The reviewing court then independently reviews the superior court's determination that no Fourth Amendment violation occurred in conducting the search." (*People v. Needham*, *supra*, at p. 265.)  "If the search or seizure violated the Fourth Amendment, then the evidence seized as a result of that search must be excluded." (*Ibid.*, citing *Mapp v. Ohio* (1961) 367 U.S. 643, 655.)  "On appeal we consider the correctness of the trial court's ruling itself, not the correctness of the trial court's reasons for reaching its decision." (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 145, italics omitted.)

c.  *Analysis*.

"A defendant may move . . . to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure on . . . the . . . grounds . . . [¶] . . . [t]he search or seizure without a warrant was unreasonable."  (§ 1538.5, subd. (a)(1)(A).)  "We review issues relating to the suppression of evidence derived from police searches and seizures under federal constitutional standards."  (*People v. Rossetti* (2014) 230 Cal.App.4th 1070, 1074, citing *People v. Bradford* (1997) 15 Cal.4th 1229, 1291.)

"The Fourth Amendment provides '[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . . .'  [Citation.]  This guarantee has been incorporated into the Fourteenth Amendment to the federal Constitution and is applicable to the states.  [Citation.]"  (*People v. Camacho* (2000) 23 Cal.4th 824, 829-830.)[7]  The Fourth Amendment " 'contains no provision expressly precluding the use of evidence obtained in violation of its commands' " (*Herring v. United States* (2009) 555 U.S. 135, 139), but the United States Supreme Court "establish[ed] an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial" (*ibid.*).  The exclusionary rule prohibits not only "[t]he introduction into evidence of materials seized and observations made during an unlawful search" (*People v. Lamas* (1991) 229 Cal.App.3d 560, 568) but also "the introduction into evidence of materials and testimony which are the products or indirect results of the illegal search, the so-called 'fruit of the poisonous tree' doctrine" (*ibid.*).

---

**7**     "A similar guarantee against unreasonable government searches is set forth in the state Constitution [citation] but, since voter approval of Proposition 8 in June 1982, state and federal claims relating to exclusion of evidence on grounds of unreasonable search and seizure are measured by the same standard.  [Citations.]"  (*People v. Camacho*, *supra*, 23 Cal.4th at p. 830.)

Defendant asserts his suppression motion should have been granted because the CSH police conducted a warrantless search of his "home," i.e., his area of the CSH dormitory, in violation of the Fourth Amendment. "The applicability of the Fourth Amendment turns on whether 'the person invoking its protection can claim a "justifiable," a "reasonable," or a "legitimate expectation of privacy" that has been invaded by government action.' [Citation.]" (*Hudson v. Palmer* (1984) 468 U.S. 517, 525 (*Hudson*).) " 'At the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' [Citation.]" (*Kyllo v. United States* (2001) 533 U.S. 27, 31.) However, we do not believe defendant's expectation of privacy in his area of the CSH dormitory "is the kind of expectation that 'society is prepared to recognize as "reasonable." ' [Citation.]" (*Hudson*, *supra*, at p. 525, fn. omitted.)

Defendant is an SVP. Under the California Sexually Violent Predators Act (SVPA) (Welf. & Inst. Code, § 6600 et seq.), an SVP is "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior" (*id.*, § 6600, subd. (a)(1)). While SVP's " 'are to be viewed "not as criminals, but as sick persons" ' " (*People v. Fields* (2009) 175 Cal.App.4th 1001, 1017), they nonetheless are "confine[d] and treat[ed] . . . until their dangerous disorders recede and they no longer pose a societal threat" (*Moore v. Superior Court* (2010) 50 Cal.4th 802, 815). An SVP's commitment to a secured facility like CSH, which " ' "protect[s] the public from [a] dangerous felony offender[] with [a] mental disorder[]" ' " (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 344), is sufficiently analogous to an inmate's incarceration in prison, which "by definition . . . [is a] place[] of involuntary confinement of persons who have a demonstrated proclivity for anti-social criminal, and often violent, conduct" (*Hudson*, *supra*, at p. 526). Also, akin to prison administrators, CSH staff is

"under an obligation to take reasonable measures to guarantee the safety of the [patients]" and "must be ever alert to attempts to introduce . . . contraband into the premises . . . ." (*Id.* at pp. 526-527.) Because treatment and rehabilitation of SVP's is the purpose of SVPA commitments, it is especially critical for CSH staff to prevent these individuals from procuring child pornography and other illicit material.

"Determining whether an expectation of privacy is 'legitimate' or 'reasonable' necessarily entails a balancing of interests." (*Hudson*, *supra*, 468 U.S. at p. 527.) Here, the competing interests are defendant's interest in privacy within his area of the CSH dormitory and society's interests in both the security and order of a maximum-security psychiatric hospital and the treatment and rehabilitation of SVP's. "Virtually the only place [patients] can conceal . . . contraband [such as child pornography] is in their [dormitories]." (*Ibid.*) A recognition of privacy rights for SVP's in their dormitories would hamper CSH staff from accessing the dormitories and ferreting out child pornography, the possession of which has become widespread, has incited violence among the patients, and clearly undermines the rehabilitation objective. Searches of the over 800 SVP's and their dormitories, even if done at random, " 'are valid and necessary to ensure the security of the institution and the safety of [patients]' " (*id.* at p. 529) as well as promote the rehabilitation objective, giving CSH staff " 'flexibility' " and preventing patients " 'from anticipating, and thereby thwarting, a search for contraband' " (*ibid.*), a key concern at CSH. We also point out the record establishes a CSH dormitory " 'shares none of the attributes of privacy of a home' " (*id.* at p. 527): the dormitory itself accommodates multiple patients, officers conduct random searches on a daily basis, and various signs throughout the facility warn patients they are subject to such searches.

"We are satisfied that society would insist that [an SVP's] expectation of privacy always yield to what must be considered the paramount interests in institutional security [and rehabilitation]. We believe that it is accepted by our society that '[loss] of . . .

privacy [is an] inherent incident[] of confinement.' [Citation.]" (*Hudson*, *supra*, 468 U.S. at p. 528.)

## II. The trial court did not abuse its discretion when it denied defendant's *Romero* motion.

### a. *Background*.

Prior to sentencing, defendant filed a motion to dismiss the prior strike convictions. In support of his motion, he contends, inter alia, (1) the current offense was nonviolent; (2) his past convictions were remote; and (3) an indeterminate sentence would be unjust.

At a hearing on the motion, the trial court ruled:

> "After consideration of the constitutional rights of [defendant] and the interest of society, the Court is aware . . . of its discretion under . . . [s]ection 1385. And after giving this case a lot of thought and considering the discussion that the Court had in . . . *Romero*, the Court will not strike or dismiss . . . [d]efendant's two prior strikes. . . . Defendant has failed to lead a conviction-free life since suffering the first conviction. And I note that there are different times and dates for the two prior convictions. . . . Defendants' criminal history spans a long period of time. . . . Defendant's prior performance on probation or parole was unsatisfactory . . . . [T]herefore, the Court denies . . . [d]efendant's motion pursuant to . . . [s]ection 1385." (Italics added.)

Defendant was sentenced to 25 years to life in prison.

### b. *Standard of review*.

"[A] trial court's refusal or failure to dismiss or strike a prior conviction allegation under section 1385 is subject to review for abuse of discretion." (*People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*).) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a

particular sentence will not be set aside on review." ' [Citation.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at pp. 376-377.) Hence, "a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances." (*Id.* at p. 378.)

    c. *Analysis*.

    "[A] judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." (§ 1385, subd. (a).) This provision "permit[s] a court acting on its own motion to strike prior felony conviction allegations in cases brought under the Three Strikes law." (*Romero*, *supra*, 13 Cal.4th at pp. 529-530; accord, *People v. Williams* (1998) 17 Cal.4th 148, 158 (*Williams*).) "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, . . . the court . . . must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, *supra*, at p. 161; accord, *Carmony*, *supra*, 33 Cal.4th at p. 377; see *People v. Myers* (1999) 69 Cal.App.4th 305, 310 ["The court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary."].)

    We conclude the court did not abuse its discretion when it refused to strike defendant's prior convictions for committing a lewd or lascivious act upon a child under 14 years of age. As noted, " ' "[t]he burden is on the party attacking the sentence to

10.

clearly show that the sentencing decision was irrational or arbitrary. [Citation.]" ' "
(*Carmony*, *supra*, 33 Cal.4th at p. 376.) On appeal, defendant reiterates (1) the current offense was nonviolent; (2) his past convictions were remote; and (3) an indeterminate sentence would be unjust. He argues he "falls outside the spirit" of the Three Strikes law because he "is not a violent repeat offender" and "will be returned to the state hospital when he is released from prison." These claims are unavailing. First, the fixation on the nonviolent nature of possessing child pornography is unavailing: "Since the express intent of the Three Strikes law is 'to ensure longer prison sentences' for any defendant who has a qualifying strike and subsequently commits 'a felony,' the nonviolent or nonthreatening nature of the felony cannot alone take the crime outside the spirit of the law." (*People v. Strong* (2001) 87 Cal.App.4th 328, 344, fn. omitted.) Next, "[i]n determining whether a prior conviction is remote, the trial court should not simply consult the Gregorian calendar with blinders on." (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813.) Although defendant points out his prior convictions occurred in 1992 and 1995, he does not dispute he performed poorly on probation and parole. (Cf. *People v. Philpot* (2004) 122 Cal.App.4th 893, 907 [parole violations].) Moreover, he was determined to be an SVP in 1997 and has been involuntarily committed since that time, indicating rehabilitation has been unsuccessful. (Cf. *ibid.* [dim prospects for rehabilitation and lack of meaningful crime-free periods].) Finally, "[s]triking a prior serious felony conviction ' "is an extraordinary exercise of discretion, and is very much like setting aside a judgment of conviction after trial." [Citation.]' [Citation.] Accordingly, such action is reserved for '[e]xtraordinary' circumstances. [Citation.] This case, however, is far from extraordinary." (*Ibid.*) We cannot find the court's decision not to strike defendant's prior convictions irrational or arbitrary.

## DISPOSITION

The judgment is affirmed.

Filed 1/24/18

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. JEROME CLIFFORD GOLDEN, Defendant and Appellant. | F072710 (Super. Ct. No. F12909338) **ORDER** |

It appearing that part of the nonpublished opinion in the above entitled matter filed on December 28, 2017, meets the standards for publication specified in California Rules of Court, rule 8.1105(c), IT IS ORDERED that the opinion be certified for publication in the Official Reports with the exception of part II. of the Discussion.

FRANSON, J.

WE CONCUR:

LEVY, Acting P.J.

GOMES, J.