[No. A125880. First Dist., Div. One. Mar. 29, 2010.]

THE PEOPLE, Plaintiff and Appellant, v.
GIDEON GORDON SHAFRIR, Defendant and Respondent.

## Counsel

Nancy E. O'Malley, District Attorney, and A. Mark Hutchins for Plaintiff and Appellant.

Cooper Law Offices, Colin L. Cooper, Kellin R. Cooper and Dustin M. Gordon for Defendant and Respondent.

## Opinion

**DONDERO, J.**—At his preliminary examination, defendant Gideon Gordon Shafrir made a motion under Penal Code section 1538.5 to suppress contraband found in his automobile, on the ground the evidence was discovered as the result of an illegal inventory search conducted by officers of the California Highway Patrol (CHP). The magistrate denied the motion. The trial court, however, granted defendant's subsequent motion to set aside the information pursuant to Penal Code section 995. In this appeal the district attorney challenges the latter ruling, arguing essentially that the trial court misapplied governing Fourth Amendment principles set out in *Colorado v. Bertine* (1987) 479 U.S. 367 [93 L.Ed.2d 739, 107 S.Ct. 738]. As discussed below, we conclude the magistrate's initial ruling was correct and reverse the order granting the section 995 motion.

### Background

On April 3, 2008, at approximately 3:40 a.m., CHP Officers Michael Tenney and Leo Smith spotted a late-model silver or grey Mercedes traveling at a "very high rate of speed" on eastbound Interstate 80 at Treasure Island. The officers initiated a traffic stop after pursuing the Mercedes and matching its speed at a "little over 110 miles an hour" as it exited the Bay Bridge and entered east Interstate 580. The driver and sole occupant—defendant—exited Interstate 580 as directed and parked the Mercedes on MacArthur Boulevard

at its intersection with Market Street, in Oakland. After conducting a DUI (driving under the influence) investigation, the officers arrested defendant for driving under the influence of alcohol and placed him in their vehicle. At that time the officers decided to remove and store the Mercedes for safekeeping pursuant to Vehicle Code section 22651, subdivision (h), rather than leave it parked where it was.[1] Officer Tenney stated, in effect, that he would not have removed the vehicle had there been "a sober passenger" to drive it safely away, or if it had been parked in or near defendant's home neighborhood. However, the vehicle was "a newer Mercedes" parked in a neighborhood in which auto theft and other crimes were common. In fact, Officer Tenney stated he would have removed *any* vehicle from that neighborhood because it was not "a safe place to keep [it] parked." Officer Smith's testimony was consistent with Officer Tenney's. He stated the decision to remove the vehicle was based initially on the fact that it was a "brand new Mercedes" parked in a neighborhood known to him as a "high crime area."

After making the initial decision to remove the vehicle for safekeeping, Officer Smith proceeded to conduct an inventory search. During the inventory search, within the trunk of the Mercedes, Officer Smith found a box containing three "large" bags of suspected marijuana, as well as a paper bag containing $50,000 in cash. At that point the officers changed their authority for removal from the "safekeeping" provision of Vehicle Code section 22651, subdivision (h), to the "seizure of evidence" provision of Vehicle Code section 22655.5.[2]

---

[1] This provision confers on officers a discretionary authority to remove a vehicle following a custodial arrest. That is, it provides that a peace officer "may remove" a vehicle "[w]hen an officer arrests a person driving [the] vehicle for an alleged offense and the officer is, by this code or other law, required or permitted to take, and does take, the person into custody." (Veh. Code, § 22651, subd. (h)(1).) A CHP manual concerning vehicle removal, impoundment, and seizure practices (the CHP manual), revised in July 2007 and applicable at the time of defendant's arrest, was submitted into evidence at the preliminary examination by defendant. The CHP manual advised officers to use Vehicle Code section 22651, subdivision (h), in order "to provide for the safekeeping of vehicles and the property they may contain" after "the driver or person in control" has been "arrested and taken forthwith." The manual did not otherwise specify factors to consider when deciding removal was necessary for "safekeeping," except to require that a vehicle *not* be removed from private property owned, leased, or rented by the driver or person in control (for example, a private parking space or residential property).

The CHP manual provides guidelines of standard practices once a car is impounded or stored. The CHP officer will conduct an inventory of the owner's property to protect the department from claims of lost, stolen or vandalized property. This inventory of items in legally accessible areas is to be included in the "CHP 180 Vehicle Report." If the CHP finds a *locked* container or box in the vehicle it is not to be opened. However, its locked condition is to be noted in the CHP 180 Vehicle Report. None of the items inventoried and searched after the impound here were locked or sealed.

[2] That is, on the CHP form required to be completed while conducting an inventory search, Officer Smith crossed out Vehicle Code section 22651, subdivision (h)—the authority for the vehicle removal he had initially written—and substituted Vehicle Code section 22655.5. The

Four days later, on April 7, the district attorney filed a complaint charging defendant with misdemeanor violations of Vehicle Code sections 23152, subdivisions (a) and (b) (driving under the influence), and 23103, subdivision (a) (reckless driving). It further charged defendant with two felony violations of Health and Safety Code sections 11359 (possession of marijuana for sale) and 11360, subdivision (a) (transportation or sale of marijuana). At the preliminary examination, held on September 18, defendant made a motion under Penal Code section 1538.5 to suppress the incriminating evidence found during the inventory search, arguing that it was conducted after an improper exercise of discretion to impound the Mercedes. The magistrate denied the section 1538.5 motion after argument by counsel and ordered defendant to be held as charged. On October 2, defendant pleaded not guilty to the foregoing charges, as restated in an information filed September 25.

On January 13, 2009, defendant filed a motion under Penal Code section 995 to dismiss the counts alleging felony violations of Health and Safety Code sections 11359 and 11360, subdivision (a). He claimed the magistrate had erred in denying his motion to suppress and had held him to answer the counts without reasonable or probable cause. (See Pen. Code, § 995, subd. (a)(2)(B).) Again, defendant did not challenge the inventory search itself, but argued the evidence found during the search was inadmissible because the arresting officers had abused their discretion in deciding to impound the Mercedes rather than leave it parked. He reasoned more particularly that the decision to impound had "completely ignore[d] . . . specific policies laid out for [DUI] arrests" in the CHP manual. These "policies" summarized Vehicle Code section 14602.8, which provides that a peace officer "may immediately cause the removal" of a vehicle when he or she determines that the driver has been convicted of one or more specified DUI offenses within the past 10 years and the driver either is found to have 0.10 percent of alcohol in his or her blood or refuses to complete a chemical test when requested to do so. (Veh. Code, § 14602.8, subd. (a)(1).) Significantly, the section also provides for minimum periods of impoundment following removal, determined by the number of prior DUI convictions. (Veh. Code, § 14602.8, subd. (a)(2).) Defendant argued that he had no prior DUI convictions, and since section 14602.8 and the CHP manual did not expressly authorize removal of a vehicle in his situation—a first-time DUI arrest—the officers' decision to remove his vehicle pursuant to the safekeeping provision

---

latter section provides, among other things, that a peace officer may remove a vehicle "[w]hen . . . a peace officer has probable cause to believe that the vehicle was used as the means of committing a public offense." (Veh. Code, § 22655.5, subd. (a).)

of Vehicle Code section 22651, subdivision (h), was an improper contravention of the CHP manual's procedures based on section 14602.8.[3]

At the continued hearing on the Penal Code section 995 motion, held July 31, 2009, the trial court commented that the factors articulated by the officers at the Penal Code section 1538.5 hearing, in explanation of their initial decision to remove the vehicle for safekeeping purposes, "seem[ed] . . . reasonable" and were "very good reasons why the car should have been taken someplace else." Additionally, counsel for defendant acknowledged the CHP manual regulating the department's field practices in impounding vehicles and conducting inventory searches was "about the most extensive I have ever seen. . . . [V]ery, very detailed." Yet the court nevertheless expressed concern that these factors were not part of a "standardized criteria" in accordance with "the *Colorado* case"—that is, *Colorado v. Bertine, supra*, 479 U.S. 367 (*Bertine*). The trial court concluded the CHP manual lacked "guidelines in understanding what safekeeping means, such that every CHP officer would . . . [¶] . . . at least analyze the question . . . based upon the same factors." The court granted the section 995 motion, and this appeal followed. (Pen. Code, § 1238, subd. (a)(1).)

### DISCUSSION

■ In *Bertine*, Boulder city police effected a custodial arrest of defendant Bertine for driving under the influence of alcohol. A backup officer conducted an inventory search of the defendant's van before having it towed and found contraband and cash. (*Bertine, supra*, 479 U.S. 367, 368–369.) The officers had decided to impound the vehicle under authority of a Colorado statute almost identical to Vehicle Code section 22651, subdivision (h)—the initial authority on which the CHP officers relied in this case. (See *Bertine, supra*, at p. 368, fn. 1; cf. fn. 1, *ante*.) The United States Supreme Court rejected the argument that the inventory search of the van was unconstitutional because the Colorado statute and departmental regulations gave the police discretion to choose between impounding it or locking it in a public place. The majority held, in effect, that Fourth Amendment protections did not "prohibit[] the exercise of police discretion so long as that discretion [was] exercised according to standard criteria and on the basis of something *other than suspicion of evidence of criminal activity*." (*Bertine, supra*, at p. 375, italics

---

[3] Defendant reiterates this unconvincing argument on appeal. We observe simply that, although Vehicle Code section 14602.8 does not authorize removal and a minimum impoundment period after a first-time DUI arrest, this is by no means equivalent to an express prohibition against removing a vehicle (without a minimum period of impoundment) following a custodial arrest for a first-time DUI offense, when the removal decision is reasonably based on other authority such as the safekeeping provision of Vehicle Code section 22651, subdivision (h). Indeed, section 22651, subdivision (h), provides an *alternative* rationale for impounding the vehicle in this case and conducting the inventory in issue.

added.) Noting there had been no showing that the police had chosen to impound the van in order to investigate suspected criminal activity or otherwise acted in bad faith, the majority concluded the Boulder police had exercised their discretion "in light of standardized criteria" (*id*. at pp. 375–376)—a police directive that both "circumscribe[ed] the discretion of individual officers" and also protected the vehicle and its contents and minimized claims of property loss (*id*. at p. 376, fn. 7).

In *Florida v. Wells* (1990) 495 U.S. 1 [109 L.Ed.2d 1, 110 S.Ct. 1632], the Supreme Court again faced an inventory search after a DUI arrest. The majority held some degree of police discretion in opening an item found during an inventory search is entirely appropriate under the Fourth Amendment. " 'Nothing . . . prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.' [Citation.]" (*Florida v. Wells, supra*, at pp. 3–4.) A mechanical rule that insists on covering all or nothing is too inflexible. "A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and [the] characteristics of the container itself. . . . The allowance of [this] exercise of judgment . . . does not violate the Fourth Amendment." (*Id*. at p. 4.)

The district attorney argues chiefly that the trial court erred in granting defendant's motion under Penal Code section 995, because it misinterpreted the principles of *Bertine* and *Wells* so as to "discard fundamental Fourth Amendment principles in this area of the law by requiring that towing decisions be based on something other than, or in addition to, objective reasonableness."

When, as here, a magistrate rules on a motion to suppress under Penal Code section 1538.5 raised at the preliminary examination, he or she sits as the finder of fact with the power to judge credibility, resolve conflicts, weigh evidence, and draw inferences. In reviewing the magistrate's ruling on a subsequent motion under Penal Code section 995, the superior court sits as a reviewing court—it must draw every legitimate inference in favor of the information, and cannot substitute its judgment for that of the magistrate on issues of credibility or weight of the evidence. On review of the superior court ruling by appeal or writ, we in effect disregard the ruling of the superior court and directly review the determination of the magistrate. In doing so we draw all presumptions in favor of the magistrate's express or implied factual

determinations and must uphold them if they are supported by substantial evidence.[4] (See *People v. Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].)

Thus, the reasons stated by the trial court in granting defendant's Penal Code section 995 motion are, strictly, not relevant. (See *People v. Wimberly* (1992) 5 Cal.App.4th 439, 443 [6 Cal.Rptr.2d 800].) The critical issue is whether the magistrate was correct in denying defendant's motion to suppress. As to this issue, we defer to the magistrate's factual determinations when supported by substantial evidence, but exercise our independent judgment in determining whether, on such facts, the challenged search was reasonable under the Fourth Amendment. (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729].)

In *South Dakota v. Opperman* (1976) 428 U.S. 364 [49 L.Ed.2d 1000, 96 S.Ct. 3092] (*Opperman*), the majority observed that police frequently impound vehicles as part of their " 'community caretaking' " function, and an inventory search of a vehicle, once lawfully impounded pursuant to this function, furthers three legitimate purposes: the protection of the vehicle owner's property while in police custody, the protection of police against claims of loss or damage to items within the vehicle, and the protection of police from potentially dangerous items that might be within the vehicle. (*Id.* at pp. 368–369.) The *Opperman* court emphasized that the critical issue under the Fourth Amendment is whether a search is *unreasonable*, and reasonableness must be determined under all the circumstances. (*Opperman, supra,* at pp. 372–373.) The majority concluded that an inventory search of a locked vehicle, conducted pursuant to "standard police procedures" after the vehicle was lawfully impounded, was not "unreasonable." (*Id.* at pp. 372, 376.)

As noted above, the court in *Bertine, supra,* 479 U.S. 367 stated that the Fourth Amendment does not prohibit the exercise of police discretion to impound a vehicle "so long as that discretion is exercised according to standard criteria." (*Bertine, supra,* at p. 375.) It is notable, however, that the court went on to state that its decision was governed by the principles enunciated in *Opperman, supra,* 428 U.S. 364. (*Bertine, supra,* at p. 376.) Thus it seems clear that the majority in *Bertine* did not intend to impose a

---

[4] In summarizing the facts above, we have accordingly examined the evidence admitted at the preliminary examination in the light most favorable to the magistrate's order denying defendant's motion to suppress, resolving conflicts and drawing reasonable inferences in its favor. (See *People v. Molina* (1994) 25 Cal.App.4th 1038, 1041 [30 Cal.Rptr.2d 805].) Similarly we decline to address arguments grounded on credibility, such as defendant's attack on the testimony by both CHP officers that the initial basis for their decision to remove defendant's vehicle was the safekeeping provision of Vehicle Code section 22651, subdivision (h), and not the seizure of evidence provision of Vehicle Code section 22655.5. (See fn. 2, *ante,* and accompanying text.)

categorical test—requiring that a decision to impound a vehicle be governed in all instances by "standard criteria"—that would supplant the governing principles stated in *Opperman*. In other words, the overarching test under the Fourth Amendment remains the same as for any other challenged search—whether it was "unreasonable" under all the circumstances. As the majority in *Opperman* noted, applying the Fourth Amendment standard of reasonableness to inventory searches is constitutionally permitted. (*Opperman, supra,* at pp. 369–371.)

Recent decisions by the federal courts of appeals are instructive on this point. In *U.S. v. Coccia* (1st Cir. 2006) 446 F.3d 233, 238 (*Coccia*), the First Circuit rejected a contention that the "absence of standardized criteria" invalidated a police decision to impound a vehicle. That court did "not understand *Bertine* to mean that an impoundment decision made without the existence of standard procedures is per se unconstitutional" but rather "to indicate that an impoundment decision made pursuant to standardized procedures will most likely, although not necessarily always,[5] satisfy the Fourth Amendment." (*Coccia, supra,* at p. 238.) The court noted that " 'police cannot sensibly be expected to have developed, in advance, standard protocols running the entire gamut of possible eventualities' " but " 'must be free . . . to choose freely among the available options, so long as the option chosen is within the universe of reasonable choices.' " (*Id.* at p. 239, quoting *U.S. v. Rodriguez-Morales* (1st Cir. 1991) 929 F.2d 780, 787.) The court held that the proper determination is whether a decision to impound pursuant to the community caretaking function is reasonable based on all the facts and circumstances. (*Coccia, supra,* at p. 239.)

Similarly, the court in *U.S. v. Smith* (3d Cir. 2008) 522 F.3d 305 (*Smith*) held that a city police officer's decision to impound a vehicle was reasonable under the Fourth Amendment, despite the fact that the city's police department had no "standardized policy regarding the impoundment and towing of vehicles" at the time. (*Smith, supra,* at pp. 310, 314–315.) In doing so, the Third Circuit expressly adopted the rationale of *Coccia*, and concluded that the officer's decision to impound—in order to avoid leaving the vehicle in an area where it was subject to being damaged, vandalized, or stolen—was reasonable under the circumstances. (*Smith, supra,* at pp. 314–315.)

---

[5] For example, the Ninth Circuit determined in the context of a civil action that a decision to remove a vehicle from the owner's driveway, although made pursuant to local ordinance and state statute, was nevertheless unreasonable under the Fourth Amendment. (*Miranda v. City of Cornelius* (9th Cir. 2005) 429 F.3d 858, 864–865.) The vehicle was parked in the driveway of the subject. However, when the vehicle is on a public road and exposed to vandalism or theft, impounding the automobile and inventorying its contents is not unreasonable. (*U.S. v. Jensen* (9th Cir. 2005) 425 F.3d 698, 706; *Hallstrom v. City of Garden City* (9th Cir. 1993) 991 F.2d 1473, 1477, fn. 4.)

California courts have also passed on the appropriateness of police judgment to impound a vehicle and inventory its contents. In *People v. Needham* (2000) 79 Cal.App.4th 260 [93 Cal.Rptr.2d 899], Tulare County Sheriff deputies decided to impound a motorcycle parked in Ledbetter Park which had expired registration tags. A duffelbag was attached to the motorcycle. The sheriff's department had no written policy dealing with impounding vehicles and conducting inventory searches. The deputies involved had previously been orally instructed on the provisions of the Vehicle Code. Additionally, they had been delegated some discretion to either seize the vehicle and inventory its contents or turn it over to a responsible party other than the arrestee. Methamphetamine found in the duffelbag was properly received at the trial. The reliance on an oral as opposed to a written policy dealing with inventory searches was not significant. Additionally, discretion whether to seize all items discovered after impounding a vehicle or passing them to a third party is not inappropriate. The inventory search in *Needham* was reasonable in scope.

In *People v. Steeley* (1989) 210 Cal.App.3d 887 [258 Cal.Rptr. 699], the police impounded an automobile that had defective headlights, the defendant driver was without identification, and the check with the Department of Motor Vehicles disclosed his license was suspended. After deciding to impound the vehicle, and while conducting an inventory search, the police found a handgun in a sleeping bag in the rear of the car. A motion to suppress was denied. On appeal, the defendant contended the police operating in the field needed to follow written guidelines that were specific in nature to cover situations like this. They should not be allowed to act outside written prescribed guidelines. However, the appellate court determined that written standards are not the test. Instead, it found the judicial "focus of the inquiry to determine whether the conduct of . . . police . . . is lawful under the Fourth Amendment" is reasonableness, citing *Opperman, supra,* 428 U.S. 364, 371–372. (*People v. Steeley, supra,* at p. 891.) "It is well settled that inventories of impounded vehicles are reasonable where the process is aimed at securing or protecting the car and its contents." (*Ibid.*)

We find the reasoning of *Coccia, Smith, Needham* and *Steeley* to be persuasive. We, too, read *Bertine* to indicate that an impoundment decision made pursuant to standardized criteria is more likely to satisfy the Fourth Amendment than one not made pursuant to standardized criteria. (*Coccia, supra,* 446 F.3d 233, 238.) However, the ultimate determination is properly whether a decision to impound or remove a vehicle, pursuant to the community caretaking function, was reasonable under all the circumstances. (*Id.* at pp. 239–240.) In this case, as noted above, the CHP officers initially decided to remove defendant's Mercedes based on their discretionary authority under the safekeeping provision of Vehicle Code section 22651, subdivision (h). There was no evidence indicating a suspicion that the vehicle would contain

evidence of criminal activity. The officers both articulated the same reasons for doing so: to avoid leaving a new luxury car in a known high-crime area of Oakland. Similar reasons were deemed reasonable under the Fourth Amendment in *Smith.* Even the trial court in this case regarded them as "reasonable." In our view the officers' decision to remove the vehicle was reasonable under all the circumstances.

It is true some courts have interpreted *Bertine* to require an impound decision to be governed by a reasonable, standard police procedure. (See, e.g., *U.S. v. Proctor* (D.C. Cir. 2007) 376 U.S. App.D.C. 512 [489 F.3d 1348, 1353].) Even if we agreed with this interpretation, it would not alter our conclusion. The standard criteria in this case was the discretionary safekeeping provision of Vehicle Code section 22651, subdivision (h), which the CHP manual advised officers to use after a custodial arrest when necessary "to provide for the safekeeping of vehicles and the property they may contain." (See fn. 1, *ante.*) In one recent case, the reviewing court rejected a contention that section 22651, subdivision (h), was sufficient *by itself* to validate a decision to remove a vehicle, when the officer admitted that his decision was based only on the fact he had made a custodial arrest and he failed to "assert any community caretaking justification." (*People v. Williams* (2006) 145 Cal.App.4th 756, 763 [52 Cal.Rptr.3d 162] (*Williams*).)[6] Here the CHP officers both testified to the same reason for their decision to utilize the authority of section 22651, subdivision (h). That reason—to protect the vehicle from damage or theft—was an eminently reasonable community caretaking justification. In this case the reliance on section 22651, subdivision (h), is sufficient to satisfy *Bertine* because, unlike the situation in *Williams*, that reliance is coupled with testimony indicating a reasonable community caretaking justification. Moreover, since both officers gave the same safekeeping reason, it is not unreasonable to infer that both received standardized training as to such factors. (See *People v. Steeley, supra,* 210 Cal.App.3d 887, 889 ["standardized procedure" under *Bertine* need not be written].)

■ In sum, we conclude that the CHP officers' initial decision to remove the vehicle was reasonable under the Fourth Amendment, and that the magistrate's denial of defendant's motion to suppress evidence found during the ensuing inventory search was accordingly correct.

---

[6] In *Williams,* the evidence disclosed there was insufficient reason to seize the automobile and consequently inventory its contents. (*Williams, supra,* 145 Cal.App.4th 756, 758.) The vehicle was legally parked at the curb in front of Williams's residence, and was not reported stolen. (*Id.* at p. 759.) Nothing in *Williams* appropriately triggered the "caretaking function." (*Id.* at p. 763.) In our case, the CHP officers provided cogent justification for impounding the Mercedes. If the car had been left in the high-crime area and vandalized, the recriminations about police misjudgment would have been shrill.

## Disposition

The order granting the motion under Penal Code section 995 and dismissing the action is reversed.

Margulies, Acting P. J., and Banke, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 30, 2010, S182932.