Filed 6/30/23  P. v. Shaw CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>DEMOIN LAMONT SHAW,<br><br>     Defendant and Appellant. | A162048<br><br>(San Mateo County<br>Super. Ct. No.<br>18NF008537A) |

In November 2018, defendant was charged with numerous drug and weapon offenses, with allegations he had been convicted of numerous prior drug and weapon offenses.  He subsequently moved to suppress evidence—drugs and a loaded firearm—found in a backpack in the trunk of his car during an inventory search before the car was towed following a collision. Defendant maintained the officers' decision to tow and thus conduct an inventory search of his car was simply a ruse to search his backpack without first obtaining a warrant.  The trial court credited the officers' testimony and found they exercised their authority to order the car towed in good faith and the inventory search was lawful.

On appeal from a judgment of conviction following a jury trial, defendant renews his challenge to the search.  He continues to maintain the officers ordered the vehicle towed in bad faith and conducted an inventory search to justify a warrantless search of his backpack.  He further claims that

1

even if the officers were not acting in bad faith in deciding to tow and search the car, the prosecution presented no evidence of a department policy permitting inventory searches of closed containers and therefore failed to prove the search of his backpack was lawful.

We affirm.

## DISCUSSION[1]

### *The Inventory Search Was Not a Ruse For a Warrantless Search*

#### *The Suppression Hearing*

Two witnesses testified at the hearing on defendant's motion to suppress.

The first was then temporary sergeant, and now Detective, Charles Baroni, who testified, in pertinent part, as follows: On the day in question, he was dispatched to the scene of a reported hit and run collision. When he arrived, Detective Baroni found defendant in the driver's seat of a damaged vehicle. The car appeared to have been involved in "a heavy collision." The "left front end [was] completely smashed," the fender "pushed in towards the engine block," and the driver's side door was "partially caved in as well."

Detective Baroni spoke with defendant through the passenger's side window. Defendant was "alert" and Baroni did not see any bleeding injuries. Defendant nevertheless appeared to be "in some discomfort" and was "obviously" hurt. An ambulance was already on the scene, and defendant was speaking to the attendants at the same time he was speaking with Baroni. Defendant "made a couple of statements" that "he was concerned about his backpack and could he put it in the trunk." The backpack was on the "right front passenger floorboard" and defendant "grabbed it."

---

[1] We discuss the evidence adduced at the suppression hearing in connection with our discussion of the issues on appeal.

At that point, ambulance personnel placed defendant on a stretcher for transport, and Detective Baroni heard defendant ask one of the ambulance attendants if he (the ambulance attendant) could put the backpack in the trunk. Although Baroni thought it was "odd or suspicious" that defendant asked about his backpack several times, Baroni "didn't really care about the backpack 'cause [he] was more concerned with [defendant]" and "knew that an officer would be investigating the case." Baroni assumed one of the ambulance attendants put the backpack in the trunk.

Once defendant was placed on the stretcher, Detective Baroni ordered "one of the parking assistants to tow the vehicle" because of its condition and because it was partially blocking the street and, in Baroni's opinion, "a traffic hazard." Neither Baroni nor any other officer attempted to start the car and move it off the roadway to a nearby curb where there were several parking spaces. Baroni explained this was because the "left front fender was pinched to where we couldn't turn the steering wheel left or right because of the damage," and based on his and the other officers' experience the car "probably couldn't be driven." He "determined that the vehicle wasn't movable just based on the–the visible damage that [he] saw." His decision to have the car towed had nothing to do with the backpack in the trunk. He would have ordered the car towed "even if there had not been a backpack in the trunk."

The prosecutor asked Detective Baroni whether the department had any "specific policies about what happens when a vehicle is towed in a situation like" the instant case. Baroni identified Department Policy 510.4, which he said requires an "inventory [of] all properties inside the vehicle, and that's to protect the police department from any false claims" and also the

3

driver "to make sure that if he had anything valuable, it would be documented."

Detective Baroni stated the parking assistant would have completed a "CHP 180 form" documenting the damage to the vehicle, the mileage, whether it had a manual or automatic transmission, the condition of the tires, and "what was located inside the vehicle." "[T]hen[,] at that point, if the registered owner didn't request his own private tow," the officer would "do a rotational tow." Baroni saw the parking assistant completing the form, but at the hearing Baroni did not have a copy of it. Baroni did not provide any information to the parking assistant for inclusion in the form.

Detective Baroni acknowledged the driver of a damaged vehicle ordinarily "get[s] to call a towing company of his choice" before the police tow the car. He also acknowledged he did not ask defendant if he wanted to make arrangements to tow the car. Nor did Baroni hear defendant say he wanted to make his own arrangements.

After the ambulance left with defendant and before the car was towed, Detective Baroni and other officers searched the car. It is not "uncommon" for an officer and a parking assistant to search different parts of a vehicle. Baroni had been able to "see pretty much most of the front of the sedan" when he spoke with defendant through the passenger side window. So he searched the trunk, and removed and opened the backpack. Baroni estimated this occurred about 10 minutes after the backpack was placed in the trunk. Baroni did not search any other areas of the car. The inventory search was conducted as a matter of policy and would have been done "even if the backpack had not been in the vehicle." Once he "located the stuff inside the backpack, [he] relinquished control to Officer Tyler Greene," the lead officer at the scene.

4

In his report of the incident, Detective Baroni discussed the backpack but did not otherwise discuss the inventory search. "Whether you write [the inventory] on the CHP 180 form or you're writing a report later, it depends on what portion you're handling at the time." The parking assistant, not Baroni, prepared the CHP 180 form, including the inventory section.

The second witness was Officer Greene. When he arrived at the scene, defendant's vehicle was "blocking the eastbound lane of traffic." He took four photographs of the car which were admitted into evidence. Greene did not attempt to move the car. Given the damage, and based on his training and experience, he did not believe the car was drivable.

Officer Greene spoke with defendant while defendant was lying on the stretcher en route to the ambulance. Defendant appeared to be "in some discomfort" and told Greene he had pain in the area of his left ribs and wanted to go to the hospital. Greene did not hear defendant say anything about his backpack.

Nor did Officer Greene hear defendant ask to make the arrangements for towing his car. The car was towed "[b]ecause the driver . . . was incapacitated and unable to move the vehicle and the vehicle was blocking the roadway." Greene estimated he had, during his career with the department, responded to over 50 vehicle accident calls, and in perhaps more than ten (a "rough estimation") the vehicles were towed by the police. Usually, the officers ask the driver whether he or she wants to arrange for towing. "[T]hat's also [the department's] policy, that our first step is to try and ask the driver to see if they have a towing party that would be able to take the vehicle from the scene." Greene acknowledged he did not make any such inquiry of defendant.

After defendant was en route to the hospital, Officer Greene checked the glove box and the center console of the car for insurance information. He also watched Detective Baroni search the trunk and backpack. In light of what that search revealed, Greene directed officers to the hospital.

In his report, Officer Greene mentioned Detective Baroni as "completing the inventory of the vehicle" and having searched the backpack, but made no mention of the parking assistant completing the CHP 180 form. Nor did Greene, in his report, discuss his own search of the glove compartment and center console for insurance information. He acknowledged that in other cases he has written in his reports, " '[t]here's nothing of note inside the glove compartment.' " Greene went on to state "if there was anything of note, like value items, like a gold ring or a Rolex watch, that would have been documented in the CHP 180." Greene did not convey any information to the parking assistant "because there was nothing of value that would have been disputable to say, like, there was a [*sic*] $1,000 in the glove compartment. If there was, [Greene] would have told him, but there was not." Greene's report did not "document[] anything of what . . . [the] Parking Assistant did." Greene testified a CHP 180 Form was completed. He did not, however, have a copy of it.

At the close of the hearing, defense counsel argued that the officers' testimony "corroborate[d]" the claim defendant had advanced in his written motion—that the search of his backpack was "a pretextual search" and "not an inventory search." The case, according to counsel, "turn[ed] on" whether the inventory search was "done in good faith," and counsel maintained it was not. Counsel emphasized the officers had not tried to start the car. Nor had they asked defendant if he wanted to arrange for it to be towed. Counsel asserted "they could have just pushed the car to the side of the road."

Counsel further claimed "nothing" was "inventoried" except the contents of the backpack. Contrary to Detective Baroni's testimony, counsel claimed Officer Greene's testimony at the preliminary hearing established that Baroni, not the parking assistant, "did the inventory." Yet, Baroni had not looked in the glove compartment, or the center console, or the side pockets. "He doesn't do an inventory search. He does a warrantless search with no probable cause"—he's "using the inventory search . . . as a pretext." Counsel further questioned whether a CHP 180 form ever existed, since neither Baroni nor Greene had a copy at the hearing. Counsel argued, "nobody takes notes, nobody does an actual inventory of what's in the vehicle. The only thing that's inventoried . . . is the content of the green backpack." And "the fact that an inventory search was [] never made" evidenced, asserted counsel, that the purported inventory search was not made "in good faith."

The prosecutor argued, in turn, that the decision to tow and search were authorized under the Vehicle Code and "the policy articulated by the officers here, when a vehicle gets towed, it gets inventoried." He further observed that defense counsel had "asked the officers questions about the [towing] policy with regards to the incapacitation of the defendant" (i.e., questions about the usual practice of giving drivers the option to arrange for the towing of their own vehicles). The prosecutor pointed out the officers testified defendant was already on a stretcher to be loaded into the ambulance, he was complaining of pain, and he "seemed to be out of it." In short, under the circumstances, it was reasonable not to ask defendant whether he wanted to make the arrangements for moving his car. The Fourth Amendment, said the prosecutor, "does not impose upon the officers the responsibility to ask these particular questions" prior to making a decision to tow and inventory a vehicle.

7

In reply, defense counsel stated "[w]e are not arguing that there was no policy. There's clearly a policy." The point, said counsel, was that in this case, unlike in other cases, the officers never asked defendant if he wanted to make the arrangements to move his car. They failed to do so because they were suspicious about the backpack and used the pretext of an inventory search to justify a search without a warrant. Counsel also claimed no "inventory search was really done." The "relevant question," said counsel, was "whether the impounding was subjectively motivated . . . by an improper investigatory purpose." Counsel maintained Detective Baroni "decided, based on his suspicion of the talk about the green backpack, that he was going to tow the vehicle and that he was going to look into the contents of the backpack."

The trial court denied the motion. The court credited the officers' testimony that the car could not have "been pushed or moved or parked somewhere close to where it was." That meant it was "going to be towed by the police" and therefore an "inventory search certainly would be proper." The court agreed with the prosecutor that first asking the driver of an incapacitated vehicle if he or she wants to arrange for towing is not constitutionally required. Observing that "we do have an individual that's out of his car, on a stretcher, going into an ambulance," the court ruled, "[l]ooking at everything from a reasonable point of view and a subjective intent point of view," the officers acted reasonably in concluding the car needed to be towed and not asking defendant whether he wanted to make the arrangements for doing so. The court further pointed out that the fact an officer suspects there might be contraband in an impounded vehicle "does not defeat [a]n, otherwise . . . proper inventory search."

*Discussion*

"Inventory searches are a well-defined exception to the Fourth Amendment's warrant requirement. (*Colorado v. Bertine* (1987) 479 U.S. 367, 371 [*Bertine*]. . . .) When a vehicle is impounded or otherwise in lawful police custody, an officer may conduct a warrantless search aimed at securing or protecting the vehicle and its contents. ([*South Dakota v.*] *Opperman* [(1976)] 428 U.S. [364,] 373 (*Opperman*)].) 'The policies behind the warrant requirement are not implicated in an inventory search [citation], nor is the related concept of probable cause.' ([]*Bertine*, at p. 371)." (*People v. Lee* (2019) 40 Cal.App.5th 853, 867 (*Lee*).)

"To determine whether a warrantless search is properly characterized as an inventory search, 'we focus on the purpose of the impound rather than the purpose of the inventory.' [Citation.] 'The decision to impound the vehicle must be justified by a community caretaking function "other than suspicion of evidence of criminal activity" [citation] because inventory searches are "conducted in the absence of probable cause" [citation].' [Citation.] For example, impounding serves a community caretaking function when a vehicle is parked illegally, blocks traffic or passage, or stands at risk of theft or vandalism." (*Lee, supra*, 40 Cal.App.5th at p. 867.)

The existence of authority for a law enforcement officer to tow a vehicle—for example, the Vehicle Code authorizes officers to tow a vehicle if it is blocking traffic or if the driver is incapacitated (Veh. Code, § 22651, subds. (b) & (g)[2])—does not conclusively resolve the question of whether, in a

---

[2] Vehicle Code section 22651 authorizes an officer to remove a vehicle from a roadway for a number of reasons, including "(b) [i]f [it] is parked or left standing upon a highway in a position so as to obstruct the normal movement of traffic or in a condition so as to create a hazard to other traffic upon the highway" and "(g) [i]f the person in charge of [the] vehicle . . . is, by

specific instance, a vehicle was towed for the improper purpose of facilitating an inventory search that would not otherwise be constitutionally permitted. (*People v. Torres* (2010) 188 Cal.App.4th 775, 790 (*Torres*) [" 'statutory authorization [to impound a vehicle] does not, in and of itself, determine the constitutional reasonableness' of an inventory search"]; *Lee, supra*, 40 Cal.App.5th at p. 869 [the officer's "statutory authority to impound [defendant's] car after apprehending him for driving on a suspended license . . . that does not automatically render any impound and subsequent inventory search constitutionally proper"].) "[I]nventory search cases apply 'the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence.' " (*Torres*, at p. 788.)

In evaluating the lawfulness of an inventory search, we evaluate "both the objective reasonableness of the impound decision and the subjective intent of the impounding officer to determine whether the decision to impound was 'motivated by an improper investigatory purpose.' " (*Lee, supra*, 40 Cal.App.5th at p. 867; *Torres, supra,* 188 Cal.App.4th at pp. 789-790.)

To be objectively reasonable, the law enforcement officer's decision to impound must serve a community caretaking function, such as "when a vehicle is parked illegally, blocks traffic or passage, or stands at risk of theft or vandalism." (*Lee, supra*, 40 Cal.App.5th at p. 867.) "Also relevant to the caretaking inquiry is whether someone other than the defendant could remove the car to a safe location." (*Ibid.*) However, a law enforcement officer is not required to adopt the least intrusive measure in deciding to impound a

---

reason of physical injuries or illness, incapacitated to an extent so as to be unable to provide for its custody or removal." (Veh. Code, § 22651, subds. (b) & (g).)

10

vehicle.  (*Bertine, supra*, 479 U.S. at p. 374; *People v. Williams* (2006) 145 Cal.App.4th 756, 761.)

"Police officers may exercise discretion in determining whether impounding a vehicle serves their community caretaking function, 'so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.'  [Citation.]  Statutes authorizing impounding under various circumstances 'may constitute a standardized policy guiding officers' discretion' [citation], though 'statutory authorization does not, in and of itself, determine the constitutional reasonableness of the seizure' [citation]."  (*Torres, supra*, 188 Cal.App.4th at p. 787.)

Because of the focus on whether an impound of a vehicle was a ruse to search for evidence of criminal activity, "inventory searches are exceptions to . . . the usual rule that the police officers' '[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.' . . . Instead, courts will explore police officers' subjective motivations for impounding vehicles in inventory search cases, even when some objectively reasonable basis exists for the impounding."  (*Torres, supra*, 188 Cal.App.4th at pp. 787-788.)

Fundamentally, we ask whether under the totality of circumstances the decision to impound the vehicle was reasonable.  (*People v. Duong* (2020) 10 Cal.5th 36, 52; *People v. Shafrir* (2010) 183 Cal.App.4th 1238, 1247 (*Shafrir*).)

In ruling on a motion to suppress evidence, the trial court " 'is vested with the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences in deciding whether a search is constitutionally unreasonable.' "  (*People v. Tully* (2012) 54 Cal.4th 952, 979.)  In reviewing a trial court's ruling on a motion to

11

suppress, " 'we defer to that court's factual findings, express or implied, if they are supported by substantial evidence.' " (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 232.) " 'We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.' " (*Silveria and Travis,* at p. 232.)

Defendant's initial argument on appeal is a reprise of the claim he advanced in the trial court—that the responding officers, and particularly Detective Baroni, acted in subjective bad faith in ordering defendant's car towed and conducting an inventory search. He repeats all the arguments he made to the trial court—that Baroni quickly became suspicious about the contents of defendant's backpack, that he made no attempt to start and move the car off the road, that he did not follow department policy and ask defendant if he wanted to make the arrangements for moving his car (a point, on which defendant places particular emphasis), that towing by the police occurs in only a small fraction of collisions, that according to Officer Greene's preliminary hearing testimony only Baroni conducted the inventory search, that Baroni did not conduct an inventory search and searched only the trunk and backpack, and that neither officer had a copy of the CHP 180 Form, suggesting one was never prepared. Defendant insists this evidence permits only one reasonable conclusion—that Baroni ordered the car towed so he could, under the guise of an inventory search, search the trunk and the backpack without a warrant.

Defendant is essentially taking issue with the truthfulness of Detective Baroni's and Officer Greene's testimony about, among other things, the condition of defendant's car (that it was heavily damaged and undriveable), why it was towed (because it was blocking traffic), why defendant was not first asked whether he wanted to arrange for towing (because he was injured

12

and being loaded into an ambulance for transport to a hospital), why an inventory search was done (pursuant to policy whenever a vehicle is towed), how the inventory search was conducted (by the parking assistant, Greene and Baroni), whether a CHP 180 form was completed (the parking assistant did so), and why their individual reports did not discuss the inventory (because they did not complete the CHP 180 form).

The trial court, however, credited the officers' testimony and found the decisions to tow the damaged car and not to first ask defendant if he wanted to make the arrangements for it to be moved were reasonable under all the circumstances and not made in bad faith. That credibility determination was a matter for the trial court and is not a determination that can be revisited on appeal. (See *People v. Quick* (2016) 5 Cal.App.5th 1006, 1010 [defendant's claim that inventory search "was an unlawful ruse to facilitate a narcotics investigation" was "refuted by the record and the trial court's factual findings"].)

We agree the officers acted reasonably under all the circumstances. While defendant insists the officers should have first attempted to start and move the car, and then should have asked him if he wanted to make arrangements to have it towed, the circumstances were such that it was reasonable for them not to do so. Given the extent and nature of the damage to the car, the officers reasonably concluded it was not drivable. And given defendant's condition—he was complaining of pain in his rib area, and he had asked to go to the hospital and was on a stretcher being loaded into an ambulance for transport—the officers reasonably did not ask him whether he wanted to make arrangements to have his car removed from the roadway, a matter to which defendant would have immediately needed to turn his attention. As the Attorney General correctly points out, even if the officers

13

departed from the department's policy to first ask a driver if he or she wants to arrange for the towing of a damaged vehicle, that did not, in and of itself, render the impound decision unconstitutional. The overriding question for Fourth Amendment purposes is whether the decision to tow the vehicle was *reasonable* under all the circumstances. (*Shafrir, supra,* 183 Cal.App.4th at pp. 1247-1248.) The officers' testimony, credited by the trial court, establishes that the decision to tow was imminently reasonable and the ensuing inventory search, lawful.

*Torres,* on which defendant heavily relies, is readily distinguishable. In that case, an officer on patrol pulled the defendant over for failing to signal and making an unsafe lane change. (*Torres, supra,* 188 Cal.App.4th at p. 780.) The defendant pulled his pickup truck into a parking stall in a public parking lot, got out of the truck, and told the officer he did not have a valid license. (*Ibid.*) The officer asked for, and defendant gave, permission to search his person, and the officer found four cell phones and over $900 in cash. (*Ibid.*) At that point, he decided to impound the truck, placed defendant in the back of his patrol car, and waited for his partner to arrive. (*Ibid.*) When he did, the officers conducted an inventory search and found methamphetamine under the driver's seat and a pay/owe sheet in the back seat. (*Ibid.*) At the initial suppression hearing the officer "conceded a narcotics officer had previously asked him to 'develop some basis for stopping' defendant" and agreed with defense counsel that he had decided to impound the truck " 'in order to facilitate an inventory search.' " (*Id.* at p. 781.) He further agreed "he was 'basically using the inventory search as a means to go look for whatever narcotics-related evidence might be in the [truck].' " (*Ibid.*) At the renewed suppression hearing, the officer admitted he had been incorrect in earlier stating he personally filled out the CHP 180 form. (*Id.* at

14

p. 782.)  He also made the same concessions he had earlier made, and further admitted his report made no mention of the narcotics officer because "he 'believed . . . [he] could write [his] police report to make it look like this was just a traffic stop and that nobody would ever find out that the narcotics officer had actually given [him] some kind of suggestion.' " (*Ibid.*)  The trial court denied the motion to suppress on the ground that regardless of the pretextual basis for the stop and impound, the officer had provided " 'independent reasons, nonpretext in nature' " for the impound and search. (*Id.* at pp. 782-783.)

The Court of Appeal reversed, focusing on the officer's "motive for impounding the car—did he impound the truck to serve a community caretaking function or as a pretext for conducting an investigatory search.?" (*Torres, supra,* 188 Cal.App.4th at p. 789.)  The officer had conceded that he impounded the truck to investigate.  (*Ibid.*)  That he offered a nonpretextual reason was immaterial.  Moreover, he did not testify to any circumstance that required impounding the truck for a "community caretaking function."  (*Id.* at p. 790.)  The truck was not illegally parked, was not impeding traffic, and was not parked in an area subjecting the truck to an enhanced risk of vandalism.  (*Ibid.*)

The record in the instant case differs markedly.  Here, unlike in *Torres,* the officers did not initiate contact with defendant—they were called to the scene of a collision.  Unlike in *Torres,* defendant's car was heavily damaged and undriveable, and obstructing traffic.  Unlike in *Torres,* defendant was injured, an ambulance was on the scene, and shortly after the officers arrived, defendant was loaded into an ambulance for transport to a hospital.

15

Nor did Detective Baroni or Officer Greene make any statements, let alone concessions, remotely similar to those made by the officer in *Torres*.[3]

In sum, ample evidence supports the trial court's findings and conclusion that the officers did not act in subjective bad faith in ordering defendant's car towed and conducting an inventory search.

### Policy Re Searches of "Closed Containers"

In a single sentence in his opening brief, defendant asserts "[a]dditionally . . . the prosecution failed in its burden to prove the existence of any policy or practice governing the opening of closed containers," such as the backpack. The Attorney General maintains defendant forfeited any such claim since he never raised it as a ground for granting the motion to suppress. In his closing brief, defendant maintains he did adequately raise the issue in the trial court and thus put the prosecution on notice of this asserted evidentiary shortcoming in its case. He alternatively urges the issue of forfeiture is at least " 'close and difficult' " and therefore this court should " 'assume' " he preserved the issue.

We agree with the Attorney General that it cannot fairly be said that in the trial court defendant adequately raised the "closed container policy" issue to which he makes passing reference in his opening brief.

---

[3] *People v. Williams* (1999) 20 Cal.4th 119 (*Williams*), which appellant also cites is distinguishable for similar reasons. In that case, the officer began tailing the defendant after seeing his pickup truck parked in front of a house where the officer suspected there was drug activity. (*Id.* at p. 123.) Minutes later, the officer pulled the defendant over for failing to signal before making a turn. (*Ibid.*) Defendant was driving without a license and after calling for assistance, the officer impounded the truck and the officers commenced an inventory search that included opening several leather bags which contained unlawful drugs. (*Ibid.*) At that point, the officer stopped filling in a CHP 180 form and arrested the defendant. (*Ibid.*) Again, the facts here are significantly different.

16

In *Williams, supra,* 20 Cal.4th at pages 130-131, 136, our Supreme Court explained that to challenge the constitutionality of an inventory search by arguing that it was not performed according to standardized criteria, a defendant has the burden to adequately raise the issue during the litigation of a motion to suppress, and a failure to do so forfeits the argument on appeal. "[W]hen defendants move to suppress evidence, they must set forth the factual and legal bases for the motion, but they satisfy that obligation, at least in the first instance, by making a prima facie showing that the police acted without a warrant. The prosecution then has the burden of proving some justification for the warrantless search or seizure, after which, defendants can respond by pointing out any inadequacies in that justification. [Citation.] Defendants who do not give the prosecution sufficient notice of these inadequacies cannot raise the issue on appeal. '[T]he scope of issues upon review must be limited to those raised during argument. . . . This is an elemental matter of fairness in giving each of the parties an opportunity adequately to litigate the facts and inferences relating to the adverse party's contentions.' " (*Id.* at p. 136.) "Defendants need only be specific enough to give the prosecution and the court reasonable notice. Defendants cannot, however, lay a trap for the prosecution by remaining completely silent until the appeal about issues the prosecution may have overlooked." (*Id.* at p. 131.) "The determinative inquiry in all cases is whether the party opposing the motion had fair notice of the moving party's argument and fair opportunity to present responsive evidence." (*Id.* at p. 135.)

Defendant's written motion generically asserted a "van [*sic*] registered to the defendant was searched without the benefit of a search warrant. The defense believes there are colorable issues pertaining to that search that

17

indicate it was unlawful. [The defendant] cannot speculate at this time what facts the prosecution will rely on to justify the detention, search and arrest of the defendant without a warrant."

In its opposing memorandum, the prosecution outlined the testimony it expected to adduce at the hearing. With respect to the challenged search (as opposed to the officer's initial contact with defendant and defendant's subsequent arrest), the prosecution advanced two arguments. The first was that Vehicle Code section 22651, subdivisions (b) and (g) authorize officers to impound and tow vehicles for " 'community caretaking' " reasons, such as when a vehicle obstructs traffic or when the driver is incapacitated. The prosecution maintained that as the result of the hit-and-run accident, defendant's vehicle was damaged to the point of being undriveable, it was blocking traffic, and defendant was injured and being transported to a hospital. "Consequently," the Vehicle Code "explicitly authorize[d]" the removal of the car, and prior to doing so, the officers could lawfully conduct "an inventory search."

The prosecution's second argument was that a warrantless inventory "of a lawfully impounded" vehicle does not violate the Fourth Amendment because such searches are "aimed at protecting the car and its contents" and are not based on probable cause. As part of the legal discussion on this point, the opposition included the following two paragraphs:

> "The decision to impound and inventory a vehicle for safekeeping under the officer's community caretaking function need only be reasonable under all the circumstances to satisfy the Fourth Amendment. [']Nothing in *Opperman* or *Layette* prohibits the exercise of police discretion in determining whether to impound or inventory a vehicle so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.' *Bertine, supra,* 479 U.S. at p. 375; see also *People v. Benites* (1992) 9 Cal.App.4th 309, 326-327. Despite this language,

18

however, a routine automobile impound, as well as the resulting inventory search, need not be based upon departmental policy, a standardized procedure[], or an established routine to be reasonable under the Fourth Amendment.

If a law enforcement agency does have impound and inventory policies and procedures, they need not be written. *People v. Needham* (2000) 79 Cal.App.4th 260, 266; *People v. Steeley, supra,* 210 Cal.App.3d at pp. 889-891. Indeed, in *People v. Green* [(1996)] 46 Cal.App.4th 367, the appellate court found that the specific statutory vehicle impound authority, coupled with the officer's matter-of-fact testimony that an inventory search followed impound under such authority, was sufficient to show a standardized departmental procedure such that the resulting search was reasonable. *Id.* at pp. 373-375. 'Statutes authorizing impounding under various circumstances "may constitute a standardized policy guiding officers" discretion' [citation], though "statutory authorization does not, in and of itself, determine the constitutional reasonableness of the seizure" [citation].' *People v. Torres, supra,* 188 Cal.App.4th at p. 787. Additionally, policies or procedures which allow for all closed containers to be inventoried are reasonable. *Florida v. Wells* [(1990)] 495 U.S. [1,] 4; *People v. Salcero* (1992) 6 Cal.App.4th 720, 723 [officer allowed to search tote bag before determining whether to release to driver]. Furthermore, '[t]he police are not precluded from conducting inventory searches when they lawfully impound the vehicle of an individual that they also happen to suspect is involved in illegal activity.' *U.S. v. Marshall* [(8th Cir. 1993)] 986 F.2d 1171, 1175-[11]76."

The prosecution then reiterated that defendant's vehicle was impounded and towed pursuant to the Vehicle Code, and stated "[a]dditionally, the Daly City Police Department's policy with regard to the removal of vehicles from traffic collision scenes and [*sic*] makes clear that those vehicles, whether stored or impounded, 'shall be inventoried,' and this 'includes the trunk and any compartments or containers, even in closed and/or locked [*sic*].' " The opposition acknowledged Detective Baroni had suspicions about the contents of defendant's backpack, but asserted those suspicions did "not negate the lawful inventory search." The decision to

19

impound and inventory a vehicle "for community caretaking purposes need only be reasonable under all the circumstances" to be valid under the Fourth Amendment.

In his reply memorandum, defendant made two arguments. First, he asserted the impound and inventory search of his vehicle was not authorized under the Vehicle Code because the vehicle "wasn't completely blocking the roadway" and defendant "was still in the vehicle." Defendant further claimed he thus "had the capacity to call someone to move the car or call a tow truck company of his choice," but "was never afforded the opportunity to do so" and therefore the inventory search was a "pretext" to search the backpack. He secondly argued the search violated the Fourth Amendment—specifically, because Detective Baroni "did not act in good faith" and "[t]he minute [defendant] started asking about his backpack, . . . Baroni made the decision he was going to search [it]." The inventory search was thus "merely pre-textual."

As we have recited, at the hearing, the prosecution elicited testimony from Detective Baroni that he searched the trunk and backpack pursuant to department inventory policy. On cross-examination, defense counsel elicited testimony that vehicles involved in an accident are impounded and towed by the police department only about 10 percent of the time, and it is department policy to first give the driver of an incapacitated vehicle the option of arranging for the vehicle to be towed.

In closing argument, defense counsel's only reference to any policy was the department's policy to first ask the driver of an incapacitated vehicle whether he or she wants to make the arrangements to have the car removed. Counsel argued the officers' failure to ask defendant that question was

20

further evidence they, and particularly Detective Baroni, acted in subjective bad faith in ordering the car towed.

The prosecution responded that the defendant was obviously injured and on a stretcher for transport to the hospital. The Fourth Amendment, asserted the prosecutor, "does not impose upon the officers the responsibility to ask these particular questions of a defendant or a suspect or a victim." Thus, while the defense could "certainly attack the fact that there is a policy" and "whether or not the officers asked, pursuant to their policy, whether the defendant wanted his vehicle towed," the "law is clear that there doesn't even have to be a written policy . . . for this inventory search to survive the Fourth Amendment." The "inquiry here is whether or not, based on the totality of the circumstances, the search here was reasonable."

In final closing, defense counsel stated "[w]e are not arguing that there was no policy. There's clearly a policy." Rather, "[w]hat the defense is arguing" is that in "other accident cases, they asked the person if they want to tow the vehicle. However, in this case, they don't. They don't ask him anything." This showed, asserted counsel, that Detective Baroni had "already decided" he "was going to tow the vehicle and conduct this so-called inventory search." In short, the fact Baroni did not follow the policy and did not ask defendant if he wanted to make arrangements to tow his car evidenced, according to counsel, Baroni's subjective bad faith. And it was because of that bad faith, and "not because of a policy," that the search was unlawful.

As the foregoing chronicles, defendant *never* based his suppression motion on the asserted lack of a policy that an inventory search includes a search of closed containers. Nor is the question of whether defendant preserved this issue even close. To the contrary, defense counsel expressly

21

told the trial court that defendant's motion to suppress was not based on the lack of a policy. Rather, defendant's motion was based on one contention— that the "subjective intent of the impounding officer," namely Detective Baroni, in making the decision "to impound," was " 'motivated by an improper investigatory purpose' " (*Lee, supra*, 40 Cal.App.5th at p. 867) and therefore the purported inventory search was " 'a ruse for a general rummaging in order to discover incriminating evidence.' " (*Torres, supra,* 188 Cal.App.4th at p. 788.)

Accordingly, the record here stands in contrast to that in *Williams*, where the defendant's moving papers expressly identified as a basis for his motion to suppress that the warrantless search of his truck was not conducted pursuant to any policy governing inventory searches. (*Williams, supra,* 20 Cal.4th at p. 137.) The moving papers also "quoted from *Wells* as follows: '. . . Florida Highway Patrol had no policy whatever *with respect to the opening of closed containers* encountered during an inventory search. We hold that absent *such* a policy, the instant search was not sufficiently regulated to satisfy the Fourth Amendment. . . .' (*Wells, supra,* 495 U.S. at pp. 4–5 . . . , italics added.) Thus, [the] defendant's motion made clear to the prosecution that it would have to prove not just any policy, but, more specifically, a policy governing [the officer's] decision to open the leather bags." (*Williams,* at p. 137.)

Defendant also asks us to consider his "closed container policy" challenge to the search " 'to avert' " a claim of ineffective assistance of counsel. We observe in this regard that in his reply memorandum, defendant did not take issue with the statement in the prosecution's opposing memorandum that "the Daly City Police Department's policy with regard to the removal of vehicles from traffic collision scenes and [*sic*] makes clear that

22

those vehicles, whether stored or impounded, 'shall be inventoried,' and this 'includes the trunk and any compartments or containers, even in closed and/or locked [*sic*]." While what parties say in legal memoranda is not evidence, we have little doubt that if the prosecution was in error in this regard, defendant would have pointed that out in his reply memorandum and on cross-examination. Thus, the record suggests a plausible explanation for why defense counsel did not challenge the search of the backpack on the ground there was no department policy that inventory searches include the search of "closed containers"—because there is, in fact, such a policy or practice. (See *People v. Henderson* (2020) 46 Cal.App.5th 533, 549 [where record is silent as to reason for counsel's action or inaction, appellate court " ' "will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions" ' "].)

We further observe that even in its current state, the record would permit an inference that, in searching the backpack, Detective Baroni was acting pursuant to a department inventory policy allowing such a search (i.e., a search of a closed container). Baroni testified that when a vehicle is towed officers "shall, per our department policies, inventory all properties inside the vehicle, and that's to protect the police department from any false claims . . . [and] to protect the person who has the vehicle . . . to make sure that if he had anything valuable, it would be documented." Baroni further testified that he searched defendant's vehicle because "[p]art of our policy is the inventory search" and immediately thereafter stated he searched "the trunk" and the "contents of that backpack." A fair inference is that Baroni's search of the trunk and backpack were pursuant to, and in accordance with, department policy regarding the scope of an inventory search. (See *People v. Smith* (2020) 46 Cal.App.5th 375, 392-393 [search of motorcycle impounded

after collision, including search of locked compartment, was lawful; traffic investigator testified inventory search "to record the existence of valuable items is normal procedure for a towed vehicle," "such searches are documented by filling out a standard form," and investigator's search "was consistent with police procedures"].) [4]

## DISPOSITION

The judgment is affirmed.

---

[4] Defendant additionally asks us to exercise our discretion to decide the merits of his "closed container" policy challenge pursuant to the maxim appellate courts may always exercise their discretion to decide an " 'important question of law.' " We decline to exercise any such discretion, if for no other reason than defendant's challenge to the search is fact-based.

 

 

_____

Banke, J.

We concur:

_____

Humes, P.J.

_____

Margulies, J.

A162048, *People v. Shaw*